Argued June 3, affirmed November 21, 1974

## LUND, *Appellant, v.* MISSION INSURANCE COMPANY, *Respondent.*

528 P2d 78

*Laurie K. Smith,* Eugene, argued the cause for appellant. On the briefs was William F. Frye, Eugene.

*Richard A. Roseta,* Eugene, argued the cause for respondent. On the brief was William G. Wheatley, of Jaqua & Wheatley, Eugene.

BRYSON, J.

Plaintiff-insured brought this declaratory judgment action to determine the scope of an uninsured motorist coverage endorsement in the automobile liability insurance policy issued to plaintiff's husband by defendant. The policy named plaintiff as an insured. The case was tried to the court upon a written statement of facts and issues. The trial court made a general finding in favor of defendant and entered judgment accordingly. Plaintiff appeals.

On March 14, 1971, plaintiff was a passenger in an automobile being driven by her spouse, David Lund. Floyd H. Gardner, the tort-feasor, rear-ended a car being driven by Garvin Stewart, forcing Stewart's car into the automobile in which plaintiff was riding.

Plaintiff, her spouse and six occupants in the Stewart car sustained injuries as a result of Gardner's negligence. At the time of the accident, Gardner owned an effective automobile liability insurance policy with limits of $10,000 per person or $20,000 per accident.

Plaintiff's action arises out of the following events. For reasons unknown to us, Gardner's insurance carrier paid the claims of all the injured parties, including plaintiff's husband, except those of plaintiff. This payment exhausted the fund available under Gardner's insurance policy and discharged Gardner's insurance carrier from further liability.

The insurance policy issued by defendant contained an uninsured motorist endorsement, as required by ORS 743.789. Under the terms of the policy, defendant agreed

"[t]o pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury, sickness or disease, including death resulting therefrom, * * *.

"* * * * *.

"* * * The term 'uninsured automobile' means: (1) an automobile with respect to the ownership, maintenance or use of which there is no bodily injury liability bond or insurance policy applicable at the time of the accident with respect to any person or organization legally responsible for the use of such automobile; * * *."

Plaintiff made a demand upon defendant for the payment of $9,159.78 for her uncompensated injuries,[1]

---

[1] Coverage under the uninsured motorist endorsement was limited to $10,000. Under the terms of the policy, since plaintiff had already received $840.22 from Gardner personally, defendant would be liable, if at all, for $9,159.78.

asserting that Gardner was "uninsured" as to her because Gardner's insurance had been exhausted by payment to the other claimants.

Defendant denied any liability under its uninsured motorist endorsement, contending that Gardner was not "uninsured" because at the time of the accident Gardner owned an effective automobile liability insurance policy in the amount of $10,000 per person or $20,000 per accident and that this coverage met all the requirements for financial responsibility under chapter 486, Oregon Revised Statutes ("financial responsibility law").

Plaintiff assigns as error the trial court's finding that the tort-feasor, Gardner, was not "uninsured" and contends that under ORS 743.792 (2) (d), a tort-feasor is "uninsured" if, as to plaintiff, his victim, the tort-feasor does not own liability insurance in an amount sufficient to compensate plaintiff for her injuries.

The 1959 Oregon Legislature enacted Oregon Laws 1959, Chapter 413 (ORS 736.317 repealed by ch 359, Oregon Laws 1967). Under that statutory scheme, the insurance companies, by the terms of their insurance policies, with the approval of the insurance commissioner rather than the legislature, defined who was an uninsured motorist or what was an uninsured vehicle.[2] As a result, the definition of the term "uninsured motorist" or "uninsured vehicle" was frequently litigated.

The Oregon Legislative Assembly responded by passage of House Bill 1041 during its regular session

---

[2] For standard insurance policy language, see A. Widdis, A Guide to Uninsured Motorist Coverage § 2.29, at 58-59, App A at 295, App B at 300-01 (1969).

in 1965.[9] This bill was vetoed by the Governor. However, in 1967 a similar bill, House Bill 1506, substantially incorporated the provisions of vetoed House Bill 1041 (1965 Regular Session). Hearings on House Bill 1506 Before the House Financial Affairs Committee, 54th Oregon Legislative Assembly, Regular Session (April 4; May 2 and 9, 1967). ORS 736.317 was repealed and House Bill 1506 was codified as the new uninsured motorist law, ORS 743.786 to ORS 743.792, and for the first time defined an "uninsured vehicle."

The question raised by plaintiff on this appeal is one of perspective. Is the "insured" or "uninsured" status of the tort-feasor, Gardner, determined by his compliance with the financial responsibility laws or by the sufficiency of his insurance to compensate plaintiff for her injuries?[10]

---

[9] Our decision in Peterson v. State Farm Ins. Co., 238 Or 106, 393 P2d 651 (1964), relating to the authority of the State Insurance Commissioner and workmen's compensation benefits in uninsured motorist endorsements, figured prominently in the legislative hearings to House Bill 1041. The substance of House Bill 1041 clearly demonstrates that the legislature was not responding to the *Peterson* decision alone, but also sought to alleviate the confusion then existing in the entire field of uninsured motorist coverage by clarifying definitions, procedures and scope of coverage. Hearings on House Bill 1041 Before the Senate Financial Affairs Committee, 50th Oregon Legislative Assembly, Regular Session (March 25, 1965).

[10] Two years after Peterson v. State Farm Ins. Co., *supra* n. 3, in Bowsher v. State Farm Fire Co., 244 Or 549, 419 P2d 606 (1966), we held that the focus of inquiry should be placed upon the victim and his injury, *i.e.,* whether the tort-feasor had insurance available to compensate the victim. Plaintiff relies upon this case. However, *Bowsher* can be distinguished from this case on the facts. In *Bowsher* the tort-feasor was insured but, under the facts, liability for injuries caused by the tort-feasor were excluded from coverage; in effect, the tort-feasor had no insurance. The question of insufficient or inadequate insurance did not arise.

ORS 743.792 provides as follows:

"* * * * *.

"(2) As used in this policy:

"* * * * *.

"(b) 'Insured vehicle,' except as provided in paragraph (c) of this provision, means:

"(A) The vehicle described in the policy or a newly acquired or substitute vehicle, as each of those terms is defined in the public liability coverage of the policy, insured under the public liability provisions of the policy; or

"* * * * *.

"(d) 'Uninsured vehicle,' except as provided in paragraph (e) of this provision, means:

"(A) A vehicle with respect to the ownership, maintenance or use of which there is no collectible automobile bodily injury liability insurance or bond, in at least the amounts or limits prescribed for bodily injury or death for a policy of insurance meeting the requirements of ORS chapter 486, *applicable at the time of the accident* with respect to any person or organization legally responsible for the use of such vehicle, or with respect to which there is such collectible bodily injury liability insurance or bond applicable at the time of the accident but the insurance company writing the same denies coverage thereunder or, within two years of the date of the accident, such company writing the same becomes voluntarily or involuntarily declared bankrupt or for which a receiver is appointed or becomes insolvent. It shall be a disputable presumption that a vehicle is uninsured in the event the insured and the insurer, after reasonable efforts, fail to discover within 90 days from the date of the accident, the existence of a valid and collectible automobile bodily injury liability insurance or bond applicable at the time of the accident; or

"* * * * *.

"(e) 'Uninsured vehicle' does not include:

"(A) An insured vehicle;

"* * * * *." (Emphasis supplied.)

A plain reading of the statute shows that the protection afforded under ORS 743.792 is limited to certain risks, *viz.*, where a tort-feasor does not have insurance meeting the requirements of ORS chapter 486, where the tort-feasor has such insurance but the carrier denies liability or becomes insolvent, or where neither insured nor insurer is able to determine the existence of a valid insurance policy applicable at the time of the accident.

■■ We conclude that the proper perspective intended by the legislature is that which directs our inquiry toward the tort-feasor "at the time of the accident," as provided in ORS 743.792(2)(d)(A), to determine whether the tort-feasor did or did not own a policy of insurance which complied with the financial responsibility laws at the time of the accident. Plaintiff contends that such a perspective would create a situation whereby a victim of an automobile accident, like plaintiff, would be better off if a tort-feasor had no insurance at all. We agree. However, the Oregon "financial responsibility law" is purely a scheme created by the legislature, and we do not believe that the legislature, in the absence of clear and unambiguous statutory directives, intended to require insurance carriers to guarantee plaintiff a minimum recovery of $10,000 for her injuries under the circumstances of this case. The primary objective of the legislature is to protect plaintiff against a noninsured, financially irresponsible motorist, not an insufficiently insured motorist. ORS 743.792 (2) (d), (e); ORS 486.011.

Other courts which have considered the problem have reached the same conclusion.[9]

■ Since we have determined that plaintiff is not entitled to recover under her uninsured motorist endorsement, we need not discuss the issues of the trial court's jurisdiction to determine coverage, liability, and damages under the endorsement. Similarly, the question of defendant's waiver of its right to demand arbitration does not require our consideration.

Affirmed.

---

[9] *See* Continental Insurance Co. v. Wallace, 233 So 2d 195 (Fla App 1970); McMinn v. New Hampshire Insurance Company, 276 So 2d 682 (Miss 1972); Lund v. State Farm Mutual Automobile Insurance Company, 342 F Supp 917 (WD Okla 1972) (applying Oklahoma law); Smiley v. Estate of Tooney, 100 Ill App 2d 271, 241 NE2d 116 (1968); and Detrick v. Aetna Casualty and Surety Co., 261 Iowa 1246, 158 NW2d 99 (1968). *See also* Kemp v. Fidelity & Casualty Co. of New York, 504 SW2d 633 (Tex Civ App 1973); Golphin v. Home Indemnity Company, 284 So 2d 442 (Fla App 1973). *Contra* Porter v. Empire Fire and Marine Insurance Co., 12 Ariz App 2, 467 P2d 77, *aff'd* 106 Ariz 274, 475 P2d 258 (1970), but Arizona statute is similar to Oregon statute before 1967 amendment and does not define "uninsured motorist."