137 N.J. Super. 558 (1975)
350 A.2d 77
JEAN GORTON, MARI FERRY AND BERNARD LEVENBERG, ADMINISTRATOR AND ADMINISTRATOR AD PROSEQUENDUM OF THE ESTATE OF JUDY LEVENBERG, DECEASED, PLAINTIFFS-APPELLANTS,
v.
RELIANCE INSURANCE COMPANY, UTICA MUTUAL INSURANCE COMPANY, AND GOVERNMENT EMPLOYEES INSURANCE COMPANY, DEFENDANTS-RESPONDENTS, AND THOMAS E. ADDY, JR., DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Argued October 28, 1975.
Decided December 16, 1975.
*559 Before Judges HALPERN, CRANE and MICHELS.
Mr. Leonard Finkelstein argued the cause for appellants (Messrs. Heilbrunn, Tabman, Josephs, Finkelstein, Heilbrunn & Garruto, attorneys; Mr. David J. Popiel, of counsel).
Mr. Thomas B. Mannion argued the cause for respondent Reliance Insurance Company (Messrs. Lynch, Mannion, Lutz & Lewandowski, attorneys).
Mr. John E. Riehl argued the cause for respondent Utica Mutual Insurance Company (Messrs. Wolff, Britt & Riehl, attorneys).
*560 Mr. Anthony C. Stuart argued the cause for respondent Government Employees Insurance Company (Messrs. Hansen, Pantages, Sellar & Zavesky, attorneys).
The opinion of the court was delivered by MICHELS, J.A.D.
Plaintiffs appeal from a summary judgment of the Law Division in favor of defendant insurance companies declaring that the uninsured motorist (UM) endorsement of the automobile liability policies issued by defendants did not provide coverage to plaintiffs for the damages they sustained as a result of an automobile accident, because the automobile in which plaintiffs Jean Gorton and Mari Ferry and plaintiff Bernard Levenberg's decedent, Judy Levenberg, were passengers was not an "uninsured highway vehicle" under the UM endorsement.
Plaintiffs Gorton, Ferry and decedent were passengers in an automobile operated by Richard Chamos which was involved in an accident with another automobile owned by John P. Gilmore and operated by Philip Dempsy. Gorton and Ferry were seriously injured. Levenberg and Chamos were killed. Plaintiffs instituted suit against Chamos, Dempsy and Gilmore. As a result of the discovery completed pursuant thereto it was determined that Dempsy and Gilmore were not at fault. It was conceded that the accident was due solely to the negligence of Chamos. The automobile which he was operating was covered by a liability insurance policy with minimum statutory limits for bodily injury or death of $10,000 a person and $20,000 an accident.
The insurance company issuing the policy covering the Chamos automobile offered the policy limits to plaintiffs and other claimants who were also injured in the accident. Since Chamos was an infant and had no assets from which to satisfy any judgment, and since he was solely responsible for the accident, plaintiffs and the other claimants settled all their claims for a total of $20,000  the limit of insurance available. The Gorton claim was settled for $4,285.71; the Ferry claim for $2,042.85, and the Levenberg claim for *561 $2,673.44. The other claimants received the balance of the $20,000 insurance coverage. These settlements exhausted the total insurance coverage available although allegedly they did not represent adequate or full compensation to plaintiffs for the damages sustained.
Each of the plaintiffs had available an automobile liability insurance policy with UM coverage which provided:
The company will pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured highway vehicle because of bodily injury or property damage, caused by accident and arising out of the ownership, maintenance or use of such uninsured highway vehicle; provided, for the purposes of this coverage, determination as to whether the insured or such representative is legally entitled to recover such damages, and if so the amount thereof, shall be made by agreement between the insured or such representative and the company or, if they fail to agree, by arbitration.
No judgment against any person or organization alleged to be legally responsible for the bodily injury or property damage shall be conclusive, as between the insured and the company, of the issues of liability of such person or organization or of the amount of damages to which the insured is legally entitled unless such judgment is entered pursuant to an action prosecuted by the insured with the written consent of the company.
An "uninsured highway vehicle" was defined in the UM endorsements issued by defendants Government Employees Insurance Company and Reliance Insurance Company as follows:
"uninsured highway vehicle" means:
(a) a highway vehicle with respect to the ownership, maintenance or use of which there is, in at least the amounts specified by the financial responsibility law of the state in which the insured highway vehicle is principally garaged, no bodily injury and property damage liability bond or insurance policy applicable at the time of the accident with respect to any person or organization legally responsible for the use of such vehicle, or with respect to which there is a bodily injury and property damage liability bond or insurance policy applicable at the time of the accident but the company writing the same denies coverage thereunder or is or becomes insolvent; * * *
*562 The UM endorsement issued by defendant Utica Mutual Insurance Company similarly defined "uninsured highway vehicle" with the exception that the definition did not include the company's becoming insolvent as a basis for finding a highway vehicle uninsured.
Plaintiffs made claim against their respective insurance companies to recover under the UM endorsements following settlement with Chamos. Each of the defendant insurance companies declined coverage contending that the Chamos automobile was not an "uninsured highway vehicle" because it was insured in at least the amounts specified by the Motor Vehicle Security-Responsibility Law. N.J.S.A. 39:6-46; N.J.S.A. 39:6-62. The Law Division on cross-motions for summary judgment, agreed and held that the Chamos automobile was not an "uninsured highway vehicle" as defined by the UM endorsements because the automobile was covered by a liability policy with at least the minimum statutory limit of $10,000 a person and $20,000 an accident. Plaintiffs appeal.
Plaintiffs contend that the definition of an "uninsured highway vehicle" in the UM endorsement is contrary to the provisions of N.J.S.A. 17:28-1.1 and thwarts the remedial purpose of this legislation. Defendants insurance companies, on the other hand, contend that N.J.S.A. 39:6-62, which deals with the same general subject matter and was enacted as part of the same legislation as N.J.S.A. 17:28-1.1 (L. 1968, c. 385), defines an "uninsured motor vehicle" to mean a motor vehicle as to which there is not in force a liability policy meeting the requirements of certain specific sections of the Motor Vehicle Security  Responsibility Law, including N.J.S.A. 39:6-69, and that as so defined the Chamos automobile was not an "uninsured highway vehicle", and plaintiffs were not entitled to coverage under their respective UM endorsements.
N.J.S.A. 17:28-1.1, which mandates the tender of UM coverage, in pertinent part provides:
*563 No automobile liability policy or renewal of such policy, of insurance insuring against loss resulting from liability imposed by law for bodily injury or death, sustained by any person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in this State with respect to any motor vehicle registered or principally garaged in this State unless coverage is offered in connection therewith, in limits for bodily injury or death set forth in section 9 of chapter 174 of the Laws of 1952 (C. 39:6-69), under provisions approved by the Commissioner of Banking and Insurance, for payment of all or part of the sums which the insured or his legal representative shall be legally entitled to recover as damages from the operator or owner of an uninsured automobile, * * *
The limits of coverage for bodily injury or death were fixed by the statute as those set forth in the Unsatisfied Claim and Judgment Fund Law (See N.J.S.A. 39:6-69), which at the time of the accident here involved were $10,000 a person and $20,000 an accident.
N.J.S.A. 17:28-1.1 was designed to provide some measure of protection for victims of accidents caused by uninsured motorists (see Motor Club of America v. Phillips, 66 N.J. 277, 292 (1974)) and should be construed liberally to effectuate the broadest range of protection to such automobile accident victims consistent with its language. See Motor Club of America Ins. Co. v. Phillips, supra at 293; State Farm v. Zurich Am. Ins. Co., 62 N.J. 155, 168 (1973); Selected Risks Ins. Co. v. Zullo, 48 N.J. 362, 372-373 (1966); Matits v. Nationwide Mutual Ins. Co., 33 N.J. 488, 495-497 (1960).
We are satisfied that N.J.S.A. 17:28-1.1, construed in accordance with the above principle, requires that all UM endorsements issued in this State provide that the victim of an accident with an uninsured motorist recover the full amount of his damages up to the minimum statutory limits for bodily injury or death set forth by the Unsatisfied Claim and Judgment Fund Law (N.J.S.A. 39:6-69). We are also of the view that the Legislature intended that this amount be recoverable either under the UM endorsement alone or in combination with those funds received from the *564 tortfeasor's insurance company. The equity and spirit of our uninsured motorist statute mandates this construction. Cf. 2A Sutherland, Statutory Construction (4 ed. Sands 1973), § 54.01 at 351-352 and § 54.08 at 375-376; Terminal Const. Corp. v. Atlantic Cty. Sewerage Auth., 67 N.J. 403, 415 (1975); Citizens For Charter Change in Essex Cty. v. Caputo, 136 N.J. Super. 424 (App. Div. 1975), certif. den., 68 N.J. ___ (1975).
If N.J.S.A. 17:28-1.1 and N.J.S.A. 39:6-2 were read literally as defendants contend, plaintiffs (whose damages allegedly warrant recovery in excess of the amount each was compelled to accept by way of settlement because of the limited insurance available) would have been far better off if the Chamos automobile had not been covered by any liability policy whatsoever. This result is not only inequitable, but it subverts the remedial purpose of our uninsured motorist statute and renders plaintiffs' UM coverage "hollow protection indeed." See Motor Club of America Ins. Co. v. Phillips, supra 66 N.J. at 292-293. We cannot conceive that our Legislature intended such a result.
Our holding finds support in other jurisdictions. In Porter v. Empire Fire and Marine Ins. Co., 106 Ariz. 274, 475 P.2d 258 (1970), mod. on other grounds 106 Ariz. 345, 476 P.2d 155 (1970), the Arizona Supreme Court similarly refused to give a strict construction to that state's Uninsured Motorist Law. There plaintiff and four other injured persons settled with the tortfeasor's insurance company for the total insurance coverage available. Plaintiff received $2,500 even though he sustained damages stipulated in the amount of $10,000. The Arizona Supreme Court held that plaintiff was entitled to recover under his uninsured motorist policy the difference between the $2,500 settlement and the $10,000 damages sustained, stating:
* * * Although on paper $10,000 was available to Porter, if he received in actuality only $1 he would find that the protection upon which he relied, and for which he paid premiums, disintegrates in the face of a flimsy, unrealistic excuse. As Allstate Insurance Company *565 conceded in the [Allstate Insurance Company v. Fusco, 101 R.I. 350, 223 A.2d 447] Fusco case, supra, the insured would be in a much better position had the tortfeasor been totally uninsured. Were this so. Porter would have been able to recover the full amount of his damages under his own uninsured motorist coverage rather than the fraction which he received from Fitch's insurance. Therefore, should this court accept Empire's contention that where a motorist carries 10/20/5 thousand dollars liability insurance and there is an accident involving more than two parties which limits the recovery to a pro rata share (in the instant case it was $2,500 for Porter) if such recovery permits the uninsured motorist carrier to escape liability despite the insufficiency of the recovery, then Porter and others in a similar position would be better off if the tortfeasor had carried no insurance. The Uninsured Motorist Law in such instance would not afford the protection which he expected and the Legislature intended.
In another opinion handed down this day, Bacchus v. Farmers Insurance Group Exchange, 106 Ariz. 280, 475 P.2d 264, we referred to a rule employed by many courts in similar cases that "the insured is entitled to recover the same amount he would have recovered if the offending motorist had maintained liability insurance." See e.g. Stephens v. Allied Mutual Insurance Company, supra. In Bacchus we stated that this rule is not entirely correct and the present case is a good example of the shortcomings of a strict application of this principle. Were we to apply it here we would be forced to leave Porter as we found him  grossly uninsured against irresponsible motorists despite his attempt to insure himself against such a contingency and contrary to the intention of the Legislature.
The uninsured policy is issued for the protection of the insured in the minimum amount provided in the Financial Responsibility Act. Otherwise, as we previously pointed out, the insured might be better off if the offending motorist had no insurance whatsoever. We agree with the principle that the person who avails himself of the protection afforded by uninsured motorist coverage should be permitted to recover as if the tort-feasor had the minimum amount of liability insurance; provided that there be available to him the full amount of his damages, up to the minimum amount prescribed by the Financial Responsibility Act, which in this case is $10,000. This is so whether this sum is recoverable under the insured's policy alone or in combination with those funds actually receivable from the tort-feasor's liability coverage. [475 P.2d at 263]
See also Stephens v. Allied Mutual Ins. Co., 182 Neb. 562, 156 N.W.2d 133, 138 (Sup. Ct. 1968); Hanlon v. Buckeye Union Ins. Co., 324 N.E.2d 598, 605-608 (Ohio Ct. C.P. 1975). Contra, Kemp v. Fidelity and Cas. Co. of New York, 512 S.W. 2d 688, 690 (Texas Sup. Ct. 1974): *566 Lund v. Mission Ins. Co., 528 P.2d 78, 81 (Or. Sup. Ct. 1974); Golphin v. Home Indemnity Co., 284 So.2d 442, 444-445 (Fla. Ct. App. 1973). See also, Annotation, "Automobile insurance: what constitutes an uninsured or unknown vehicle or motorist within the uninsured motorist coverage," 26 A.L.R.3d 883, 894 (1969).
For the foregoing reasons we hold that since the minimum statutory limit for bodily injury or death of $10,000 a person was not available to each plaintiff, the Chamos automobile was actually uninsured as to the difference between the amount of insurance coverage available and the minimum statutory limit of $10,000. Each plaintiff is entitled to recover under his UM endorsement the full amount of his damages up to a total of $10,000, less the amount already received by way of settlement with Chamos' insurance company. We deem it significant to note that there is no suggestion that plaintiffs were guilty of fraud or collusion in settling their respective claims with Chamos' insurance company.
Accordingly, the judgment of the Law Division is reversed and the matter is remanded for the entry of judgment in favor of plaintiffs consistent with the views expressed in this opinion.