Hillsborough
No. 7034

AMERICAN MUTUAL INSURANCE COMPANY

v.

COMMERCIAL UNION INSURANCE COMPANY OF NEW YORK & a.

April 30, 1976

*Wiggin, Nourie, Sundeen, Pingree & Bigg* and *William S. Orcutt* and *Gordon A. Rehnborg, Jr. (Mr. Orcutt* orally) for the plaintiff.

*Sheehan, Phinney, Bass & Green* and *James Q. Shirley* and *Bradford E. Cook (Mr. Cook* orally) for the defendant Commercial Union Insurance Company of New York.

*Craig, Wenners, Craig & McDowell (Mr. Vincent A. Wenners, Jr.,* orally) for Paul V. and Theresa Bristol individually and as heirs-at-law of their unborn child, deceased.

*Leahy & Denault,* for defendant Croft, filed no brief.

*Frederic T. Greenhalge,* by brief, as amicus curiae.

LAMPRON, J. Petition for a declaratory judgment by plaintiff American Mutual seeking a definition of the rights of the parties under a policy issued by defendant Commercial Union to defendant Georgia Croft under her maiden name of Georgia M. Richmond. Her automobile was in a collision at Newport on December 7, 1969, with a car operated by defendant Paul V. Bristol, insured

by the plaintiff, in which his wife and their unborn child were passengers. American Mutual also seeks a declaration that it is not obligated to furnish uninsured motorist coverage to the Bristols under its policy.

The matter was heard by a Master (*Carl O. Randall,* Esq.) who made certain findings and rulings and recommended that a decree be entered that Commercial Union is obligated to pay any claim established by the Bristols up to the limits of the financial responsibility law; and that American Mutual is responsible to the Bristols for any claim in excess of Commercial Union's financial responsibility limits up to the limits of American's uninsured coverage. *Flynn,* J., so decreed and reserved and transferred the exceptions of American and Commercial thereto.

Georgia M. Richmond, in whose name the Commercial Union policy was issued in February 1969, was married to one Croft in 1957 and divorced in 1963. However, she continued to use the name Croft. On November 6, 1966, she was involved in an automobile accident. Having no liability insurance at that time, she was ordered to post security for that accident and to show proof of financial responsibility before she could drive again. In April 1967, she applied for an operator's license and a motor vehicle registration under her maiden name Richmond and received both. On February 6, 1969, Georgia applied for and was issued by Commercial Union under her maiden name the family combination automobile policy involved in this case.

The master properly found that Georgia Croft intentionally made false statements in her application for insurance. Among these, she stated that her legal name was Georgia M. Richmond; that she had not been involved in an accident during the past three years; and that financial responsibility filing was not required under the policy. The master ruled that the policy was void from the outset but that Commercial Union was obligated to pay any claim established by the Bristols up to the limits of financial responsibility which were then $10,000 for one person and $20,000 for one accident. Since the policy was still outstanding on the day of the accident this ruling was properly made. RSA 268:16 I, III; *Farm Bureau Ins. Co. v. Martin,* 97 N.H. 196, 84 A.2d 823 (1951); *see Bosse v. Insurance Co.,* 88 N.H. 440, 190 A. 715 (1937).

We cannot accept the argument of Commercial Union that the provisions of RSA 268:16 I which provide that the liability of an insurer under a motor vehicle policy becomes absolute whenever

loss or damage occurs should not apply under the circumstances of this case. It maintains that if its policy had been cancelled for fraud, Croft would have become an uninsured motorist under RSA 268:15-a (Supp. 1975) and coverage would be provided by American Mutual under its uninsured motor vehicle coverage. The purpose of the financial responsibility law is to secure the solvency of operators upon the highways and provide funds for the payment of the claims of those injured in an accident. *Milwaukee Ins. Co. v. Morrill,* 100 N.H. 239, 241, 123 A.2d 163, 165 (1956); *see* Annot., 83 A.L.R.2d 1104 (1962). The interpretation of RSA 268:16 I advocated by Commercial Union would reduce the funds available to meet the claims of accident victims in derogation of the manifest intent of RSA ch. 268. Its exception to the ruling which held it liable to the limits required by the financial responsibility is overruled. *Hartford Ind. Co. v. Wolbarst,* 95 N.H. 40, 43, 57 A.2d 151, 153 (1948); *Continental Ins. Co. v. Charest,* 91 N.H. 378, 380, 20 A.2d 477, 479 (1941).

We consider next that part of the trial court's decree that American Mutual is responsible to the Bristols for any claim in excess of the financial responsibility limits of Commercial Union up to the limits of American's uninsured coverage.

The New Hampshire Uninsured Motorists Law (RSA 268:15) which first provided for protection against uninsured motor vehicles did not define the word "uninsured." Its meaning therefore must be defined with regard to the purpose of this type of insurance which is to close the gap in the protection afforded to the public under our financial responsibility act. *Maryland Cas. Co. v. Howe,* 106 N.H. 422, 423, 213 A.2d 420, 421 (1965); *Kirouac v. Healey,* 104 N.H. 157, 159, 181 A.2d 634, 636 (1962). In *Carrignan v. Allstate Insurance Company,* 108 N.H. 131, 229 A.2d 179 (1967), this court held that a motor vehicle whose insurance coverage falls short of the minimums imposed by our financial responsibility law, is an uninsured motorist within the meaning of RSA 268:15. This interpretation was adopted by the legislature and became RSA 268:15-a V (Supp. 1975). *See Charest v. Union Mut. Ins. Co.,* 113 N.H. 683, 313 A.2d 407 (1973). Similarly we held that a motor vehicle whose insurer becomes insolvent after an accident is an "uninsured" vehicle within the terms of RSA 268:15. *See* RSA 268:16 II, III for legislation in that respect.

The matter of uninsured motorist protection was considered again in *Raitt v. National Grange Mutual Insurance Company,* 111

N.H. 397, 285 A.2d 799 (1971). The issue was whether an injured party, who had collected $15,000 by settlement with an insured tort-feasor in the collision and whose damages exceeded that amount, could recover under his own uninsured motorist policy coverage when the second tort-feasor, in whose car he was a passenger, was uninsured. We held that in such a situation the injured party may turn to his uninsured motorist carrier to be indemnified within the limits of coverage to the extent that his damages exceed the compensation received from the insured tort-feasor.

This principle was reaffirmed in *Gay v. Preferred Risk Mutual Insurance Company*, 114 N.H. 11, 314 A.2d 644 (1974). That plaintiff was in an accident involving an automobile owned by Belfiore and driven by Borowski. The latter was uninsured and Belfiore had the minimum coverage required by Massachusetts of $5,000 for one person and $10,000 for one accident. Gay settled with Belfiore for $4,750. He also sued the estate of Borowski, the other tort-feasor, and obtained a judgment of $16,155.10, but recovered nothing. Gay turned to his own insurer for indemnification under his uninsured motorist coverage. We held that since Gay's damages of $16,155.10 exceeded by $11,405.10 the amount of the settlement of $4,750 with Belfiore, Gay's uninsured motorist carrier had a duty to furnish the full statutory coverage of $10,000.

The *Raitt* and *Gay* cases each dealt with an insured involved in an accident with joint tort-feasors, one of which was uninsured. From the record and briefs in this case, we are led to the conclusion that the only tort actions are by the Bristols against Georgia Croft. Hence we are dealing with multiple victims of an accident for which Georgia Croft is alleged to be solely responsible. We proceed under that assumption.

The results in the *Carrignan, Raitt,* and *Gay* cases are based on the legislative intent manifested in the financial responsibility law (RSA ch. 268) and the uninsured motorist coverage provision (RSA 268:15, now RSA 268:15-a (Supp. 1975)) that a victim of a highway accident will have a minimum insurance coverage of at least $10,000 from which to satisfy an award of damages caused by any tort-feasor. This result is intended whether the tort-feasor is wholly uninsured or whether his coverage is so minimal that it cannot provide, as in this case, a minimum of $10,000 to an injured in a multiple victim accident.

If the Bristols had been involved in an accident with a com-

pletely uninsured motorist, American Mutual would have had to make available to them up to $20,000 under its uninsured motorist endorsement. Laws 1955, 76:1; RSA 268:15-a (Supp. 1975). However, because the tort-feasor in this instance did carry minimal insurance, to be divided among these multiple claimants, American Mutual maintains that no liability should be imposed upon it regardless of how little is actually paid to each claimant for the damages he has suffered. Under such an interpretation an injured party would fare better financially if injured by a tort-feasor with no insurance than by one who is underinsured. This reaches an anomalous result given the manifest purpose of the legislation as found by this court. *Carrignan v. Allstate Ins. Co.,* 108 N.H. 131, 229 A.2d 179 (1967).

The only logical and reasonable construction of RSA 268:15-a (Supp. 1975) (Uninsured ... Motor Vehicle Coverage) which avoids this unreasonable result is the following. An insured tort-feasor is to be considered as uninsured for the purposes of the statute to the extent that the amount available from the tort-feasor's insurer to any one injured person is less than the minimum coverage required by our financial responsibility law. *Carrignan v. Allstate Ins. Co.,* 108 N.H. 131, 229 A.2d 179 (1967). Thus a victim of an accident having uninsured motorist coverage in the minimum amount prescribed by statute would recover his damages by a combination of payment received from an insured tort-feasor supplemented by the uninsured motorist carrier up to the limits of the coverage required by the financial responsibility act, or from the uninsured motorist carrier alone if no funds are available from the tort-feasor. *Raitt v. National Grange Mut. Ins. Co.,* 111 N.H. 397, 285 A.2d 799 (1971); *Gay v. Preferred Risk Mut. Ins. Co.,* 114 N.H. 11, 314 A.2d 644 (1974). Interpreted in this manner, an insured having uninsured motorist protection would receive the coverage he could reasonably expect under the provisions of RSA 268:15-a (Supp. 1975) and which the legislature intended he should receive. *Aetna Insurance Co. v. State Motors Inc.,* 109 N.H. 120, 125, 244 A.2d 64, 67 (1968); *McCaffery v. St. Paul Fire Ins. Co.,* 108 N.H. 373, 236 A.2d 490 (1967).

We so interpret the master's recommendation and the trial court's decree and they are upheld. *Porter v. Empire Fire & Marine Ins. Co.,* 106 Ariz. 274, 475 P.2d 258 (1970) (en banc); *Hanlon v. Buckeye Union Ins. Co.,* 73 Ohio Op. 2d 267, 324 N.E.2d 598 (1975); 2 R. Long, The Law of Liability Insurance § 24.09, at

24-32 (1975); *see Simonette v. Great American Ins. Co.,* 165 Conn. 466, 338 A.2d 453, 456 (1973) (dissenting opinion); A. Widiss, Uninsured Motorist Coverage § 8.2 (1969).

*Exceptions overruled.*

All concurred.