[No. 44550.   En Banc.   June 22, 1978.]

DAVID STRUNK, *as Administrator,* ET AL, *Respon-
dents,* v. STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, *Appellant.*

*Armstrong, Vander Stoep & Remund,* by *J. A. Vander
Stoep,* for appellant.

*Weber & Baumgartner, P.S.,* and *Kenneth W. Weber,* for respondents.

BRACHTENBACH, J.—This case poses the question whether an insured motorist becomes an uninsured motorist when policy limits coverage is exhausted by settlement with two claimants leaving three claimants without recovery from insurance proceeds.

The facts are that an automobile collision resulted in the deaths of a husband, his wife and their year–old son. Two of their children survived, one injured seriously and permanently. The negligent driver was insured for the statutory minimum of $15,000 per person and $30,000 per occurrence. It is stipulated that the other driver was solely at fault. The insurance carrier for the negligent driver settled the claims on behalf of the deceased husband and the deceased son for $15,000 each, thereby exhausting coverage. This left the claims on behalf of the deceased mother and the injured surviving children without insurance compensation from the negligent driver.

It is stipulated that the deceased wife and surviving injured children were "insureds" within the defendant insurance company's automobile insurance policy which included uninsured motorist coverage as required, absent waiver, by RCW 48.22.030.

Faced with no recovery under the negligent driver's liability insurance policy, the plaintiffs sued defendant insurance company claiming (a) they were insureds under defendant's policy (admitted) and (b) in the language of the statute, they were entitled to recover damages from the owner or operator of an "uninsured" motor vehicle. The plaintiffs were successful in their motion for summary judgment, the trial court holding that since the negligent driver's liability insurance coverage had been exhausted, the plaintiffs were the victims of an uninsured motorist and entitled to recover under their own policy. We reverse.

■ The central question is the meaning of the statute, RCW 48.22.030, which mandates uninsured motorist coverage absent waiver. We look to the statute rather than the defendant's policy language because of our clear declaration that the policy terms cannot diminish the statutory minimum. *Touchette v. Northwestern Mut. Ins. Co.*, 80 Wn.2d 327, 494 P.2d 479 (1972). The statute and the pertinent insurance policy provisions are quoted in the appendix. We note that neither has much to offer as to intent, clarity of expression or definition of controlling terms.

■ Nonetheless the single question is whether these plaintiffs are legally entitled to recover damages from the owner or operator of an uninsured motor vehicle. The simple answer is that these plaintiffs were killed or injured by the operator of an insured vehicle. No question but that the motor vehicle operator was insured in an amount insufficient to compensate these plaintiffs for their damages, but also there is no question but that the driver was insured in the amounts required by statute. The tort–feasor was underinsured in her ability to respond to all of the horrendous damage caused, but she was not uninsured.

We conclude that there is no room for construing the statute to mean that an insured motorist is insured as to one claimant but ephemerally uninsured when the insurance coverage is exhausted. In so deciding we join the great majority of courts which have considered this problem. *See Wilbourn v. Allstate Ins. Co.*, 293 Ala. 466, 305 So. 2d 372 (1974); *Travelers Ins. Co. v. Bouzer*, 39 Cal. App. 3d 992, 114 Cal. Rptr. 651 (1974), petition for hearing denied by Supreme Court, August 28, 1974; *Chafin v. Aetna Ins. Co.*, 550 F.2d 575 (10th Cir. 1976); *Chandler v. Government Employees Ins. Co.*, 342 F.2d 420 (5th Cir. 1965); *Lund v. State Farm Mut. Auto. Ins. Co.*, 342 F. Supp. 917 (W.D. Okla. 1972); *Simonette v. Great American Ins. Co.*, 165 Conn. 466, 338 A.2d 453 (1973); *Golphin v. Home Indem. Co.*, 284 So. 2d 442 (Fla. Dist. Ct. App. 1973); *Smiley v. Estate of Toney*, 44 Ill. 2d 127, 254 N.E.2d 440 (1969); *Detrick v. Aetna Cas. & Sur. Co.*, 261 Iowa 1246, 158

N.W.2d 99 (1968); *McMinn v. New Hampshire Ins. Co.,* 276 So. 2d 682 (Miss. 1973); *Brake v. MFA Mut. Ins. Co.,* 525 S.W.2d 109 (Mo. Ct. App. 1975), *cert. denied,* 423 U.S. 894, 46 L. Ed. 2d 126, 96 S. Ct. 192 (1975); *Simmons v. Hartford Accident & Indem. Co.,* 543 P.2d 1384 (Okla. 1975); *Lund v. Mission Ins. Co.,* 270 Ore. 461, 528 P.2d 78 (1974); *Kemp v. Fidelity & Cas. Co.,* 504 S.W.2d 633 (Tex. Civ. App. 1973); *Shelby Mut. Ins. Co. v. Smith,* 45 Ohio St. 2d 66, 341 N.E.2d 597 (1976); *reversing on appeal, Hanlon v. Buckeye Union Ins. Co.,* 73 Ohio Op. 2d 267, 324 N.E.2d 598 (C.P. Cuyahoga County 1975).

The plaintiffs rely upon four minority cases which uphold their position. *Porter v. Empire Fire & Marine Ins. Co.,* 106 Ariz. 274, 475 P.2d 258, *modified on other grounds,* 106 Ariz. 345, 476 P.2d 155 (1970); *Palisbo v. Hawaiian Ins. & Guar. Co.,* 57 Haw. 10, 547 P.2d 1350 (1976); *Gorton v. Reliance Ins. Co.,* 137 N.J. Super. 558, 350 A.2d 77 (1975), *petition for cert. granted,* 70 N.J. 273, 359 A.2d 485 (1976); *American Mut. Ins. Co. v. Commercial Union Ins. Co.,* 116 N.H. 210, 357 A.2d 873 (1976). The common thread to these cases is that their reasoning is minimal and conclusionary. That each insured on the highways should have protection against an uninsured motorist to the extent of the statutory minimum is desirable but such mandate must come from the legislature, not from this court under the guise of interpreting the uninsured motorist statute.

Our conclusion as to legislative intent is buttressed by two actions taken by the legislature. In 1977 it amended RCW 48.22.030 to provide coverage against *under*insured motorists. Substitute House Bill No. 1348, 45th Session, 1st Ex. Sess., 1977, vetoed by the Governor July 15, 1977. The amendment was such a significant change that it went to a free conference prior to its enactment.

█ This legislative amendment demonstrates that the existing law, applicable to this case, did not contemplate coverage as to the *under*insured motorist. This conclusion with our rule that when a material change in a statute is

made, a change in legislative intent is presumed. *In re Bale,* 63 Wn.2d 83, 89, 385 P.2d 545 (1963).

The second point about the legislative action is that the legislature obviously viewed the statute more narrowly than plaintiffs urge because it enacted a separate section defining "uninsured" to include coverage by an insolvent carrier unable to make payments within the limits of liability. RCW 48.22.040. If the statute were intended to have the broad, liberal interpretation contended for by the plaintiffs, it would hardly be necessary to enact a section that being insured by an insolvent insurer constitutes being uninsured. If a motorist is insured by an insolvent insurer, it is rather obvious that he is not insured at all. Yet the legislature deemed it necessary to define specifically "uninsured" to include insurance by an insolvent carrier. Surely if the legislature intended to include the elusive and liberal notion of "underinsured" within the meaning of "uninsured" it hardly needed to define "uninsured" to include coverage by an insolvent carrier.

Since it is not our function or power to rewrite either the statute or the insurance policy, the judgment must be reversed. It is so ordered.

ROSELLINI, STAFFORD, DOLLIVER, and HICKS, JJ., concur.

## APPENDIX

RCW 48.22.030 provides:

"On and after January 1, 1968, no new policy or renewal of an existing policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death set forth in RCW 46.29.490, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and hit–and–run motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom, except that the named insured may be given the right to reject such coverage,

and except that, unless the named insured requests such coverage in writing, such coverage need not be provided in or supplemental to a renewal policy where the named insured had rejected the coverage in connection with a policy previously issued to him by the same insurer."

The pertinent insurance policy provisions provide:

*"Damages for Bodily Injury Caused by Uninsured Automobiles.* To pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile; provided, for the purposes of this coverage, determination as to whether the insured or such representative is legally entitled to recover such damages, and if so the amount thereof, shall be made by agreement between the insured or such representative and the company or, if they fail to agree, by arbitration.
" . . .

*"Uninsured Automobile*—means:
"(1) a land motor vehicle with respect to the ownership, maintenance or use of which there is in at least the amounts specified by the financial responsibility law of the state in which the insured automobile is principally garaged, no bodily injury liability bond or insurance policy applicable at the time of the accident with respect to any person or organization legally responsible for the use of such vehicle, or with respect to which there is a bodily injury liability bond or insurance policy applicable at the time of the accident but the company writing the same denies that there is any coverage thereunder or becomes insolvent within three years after such accident; . . ."

HOROWITZ, J. (dissenting)—The outcome of this appeal depends on the meaning we ascribe to the phrase "uninsured motor vehicles" in our uninsured motorist statutes, RCW 48.22.030 and .040. These statutes do not define the phrase, although they do make clear that uninsured motorist coverage also applies in the cases of a hit–and–run driver and an insolvent liability insurer which has issued the liability policy on the offending motor vehicle.

In the past we have construed the word "uninsured" in a liberal manner which gives effect to the legislative intent and purpose of the statutes. The trial court applied this liberal rule of construction below and, accordingly, held for

the plaintiffs. The majority here changes the rule of construction this court has applied and now adopts a literal meaning of the word "uninsured," relying on the numerical majority of cases from other jurisdictions which have decided related issues. The majority thus abandons the approach this court has taken in the past, defeats the intent and purpose of the uninsured motorist statutes, and creates a series of anomalies, discussed below, in the law of uninsured motorist coverage in this state.

The phrase "uninsured motor vehicles" is ambiguous, *i.e.*, capable of being construed in more than one way. That is evident from the facts here. The liability insurance carrier on the offending vehicle paid out all of the insurance proceeds to two of the four passengers injured in the accident. Plaintiffs are the two passengers who received no part of the proceeds. One of the plaintiffs was seriously and permanently injured. Plaintiffs contend that as to them the offending motor vehicle was uninsured. They claim they are therefore entitled to insurance benefits under the uninsured motorist coverage policy with defendant insurance carrier, a policy for which the defendant has received a premium. The defendant, on the other hand, contends that because the offending motor vehicle carried liability insurance in some amount, it was not "uninsured" within the meaning of the statute, even though plaintiffs could not receive any of those insurance benefits because all of the proceeds had already been paid to the other two accident victims. The majority opinion does not address the peculiar effects of the preferential payment of funds, a point we later discuss.

What is the correct interpretation to be given the statutory language, "uninsured motor vehicles?" Insofar as it is inconsistent with this language, the insurance policy must give way to that language. *Hartford Accident & Indem. Co. v. Novak*, 83 Wn.2d 576, 520 P.2d 1368 (1974); *Touchette v. Northwestern Mut. Ins. Co.*, 80 Wn.2d 327, 332, 494 P.2d 479 (1972); *Brummett v. Grange Ins. Ass'n*, 4 Wn. App. 979, 981, 485 P.2d 88 (1971).

This question of statutory construction has resulted in divided case law from other jurisdictions. The conflict is one between the cases that have adopted a literal construction of the phrase "uninsured motor vehicles," and cases that have adopted a functional or liberal construction.

Under Washington law the primary and controlling role of statutory construction is to ascertain and apply the legislative intent and purpose of the language used. In *Amburn v. Daly,* 81 Wn.2d 241, 245–46, 501 P.2d 178 (1972), this court stated the rule we follow:

> The courts, in pursuance of the general object of giving effect to the intention of the legislature, are not controlled by the literal meaning of the language of the statute, but the spirit or intention of the law prevails over the letter thereof, and no construction should be given to a statute which leads to gross injustice or absurdity.

*Accord, In re Estates of Donnelly,* 81 Wn.2d 430, 436–37, 502 P.2d 1163, 60 A.L.R.3d 620 (1972); *Palisbo v. Hawaiian Ins. & Guar. Co.,* 57 Haw. 10, 547 P.2d 1350 (1976).

Moreover, we have specifically held that RCW 48.22.030 should receive a liberal construction in order to carry out the legislative intent and purpose. *Touchette v. Northwestern Mut. Ins. Co., supra. See also Solesski v. Oregon Auto. Ins. Co.,* 11 Wn. App. 850, 526 P.2d 68 (1974); 7 Blashfield, *Automobile Law and Practice* § 274.3, at 50 (3d ed. 1966). In *Touchette,* this court stated that uninsured motorist coverage is:

> designed to protect the public from the ravages of the negligent and reckless driver. It was enacted to expand insurance protection for the public in using the public streets, highways and walkways . . .

*Touchette v. Northwestern Mut. Ins. Co., supra* at 332. The court further stated at page 333:

> Read into the insurance contract as a public policy designed to expand uninsured motorist coverage to a significantly greater proportion of the population, the statute [RCW 48.22.030] should receive from the courts a construction that will effectuate its manifest purpose.

We followed this rule of liberal construction when we held that the "other insurance" clause in a liability policy violated RCW 48.22.030 and RCW 48.18.130(2). *Cammel v. State Farm Mut. Auto. Ins. Co.,* 86 Wn.2d 264, 543 P.2d 634 (1975).

Washington is not alone in refusing to give its uninsured motorist statutes a narrow and grudging interpretation which is so literal as to defeat the purpose and intent of the insurance motorist statutes. *Porter v. Empire Fire & Marine Ins. Co.,* 106 Ariz. 274, 475 P.2d 258 (1970), *modified on other grounds,* 106 Ariz. 345, 476 P.2d 155 (1970); *Palisbo v. Hawaiian Ins. & Guar. Co.,* 57 Haw. 10, 547 P.2d 1350 (1976); *Gorton v. Reliance Ins. Co.,* 137 N.J. Super. 558, 350 A.2d 77 (1975); *American Mut. Ins. Co. v. Commercial Union Ins. Co.,* 116 N.H. 210, 357 A.2d 873 (1976). In *Gorton v. Reliance Ins. Co., supra* at 563–64, the court stated, regarding the New Jersey uninsured motorist statute:

> N. J. S. A. 17:28–1.1 was designed to provide some measure of protection for victims of accidents caused by uninsured motorists . . . and should be construed liberally to effectuate the broadest range of protection to such automobile accident victims consistent with its language.

This has been the preferred approach in this state, and it should not be abandoned now.

The majority opinion here creates certain anomalies which must be addressed. Under the majority view, so long as the uninsured motorist has *some* insurance on his motor vehicle, even if less than the statutory minimum of $30,000 per accident, the motorist will not be considered uninsured. Accordingly, even when the policy proceeds are exhausted by payments to one or two of the accident victims, those victims left without payment for injuries they sustained will have no right to uninsured motorist benefits from their own uninsured motorist policy carrier. This result obtains notwithstanding the uncompensated victims have paid a premium for $30,000 per accident for uninsured motorist coverage. It follows that an accident victim covered by an

uninsured motorist policy would be better off if the offending vehicle carried no insurance whatsoever.

Moreover, an accident victim cannot even rely on having access to the $30,000 per accident liability coverage mandated by RCW 48.22.030 and RCW 46.29.490 for vehicles registered or principally garaged in this state, because out–of–state vehicles driven in this state are required to carry liability insurance as fixed by the laws of their own states. 7 Martindale–Hubbel Law Directory (1978) identifies three states, Oklahoma, Louisiana and Massachusetts, which require only $10,000 per accident liability insurance. Such a vehicle would not be "uninsured" under the majority's view. Therefore a Washington state victim would be precluded from recovering benefits from his own uninsured motorist policy carrier, even if no proceeds were available from the offending vehicle's carrier because it had exhausted the already small policy benefits in payments to other victims of the accident.

Although certain of the cases relied on by the majority recognize the existence of these anomalies, they hold there is nothing they can do about the matter. *Detrick v. Aetna Cas. & Sur. Co.,* 261 Iowa 1246, 158 N.W.2d 99 (1968); *Brake v. MFA Mut. Ins. Co.,* 525 S.W.2d 109 (Mo. Ct. App. 1975). I cannot agree that this court is helpless to avoid these anomalies. As *Porter v. Empire Fire & Marine Ins. Co., supra,* states, criticizing the reliance in the majority of cases on the literal definition of the word "uninsured," the literal approach is "nothing more than a game of semantics which underlines the difference between the theoretical—or paper coverage—available at the time of the accident and the actual coverage upon which the insured may rely." *Porter v. Empire Fire & Marine Ins. Co., supra* at 278.

The court also pointed out:

Although on paper $10,000 was available to Porter, if he received in actuality only $1 he would find that the protection upon which he relied, and for which he paid premiums, disintegrates in the face of a flimsy, unrealistic excuse. . . . The Uninsured Motorist Law in such

instance would not afford the protection which he expected and the Legislature intended.

. . .

The uninsured policy is issued for the protection of the insured in the minimum amount provided in the Financial Responsibility Act. Otherwise, as we previously pointed out, the insured might be better off if the offending motorist had no insurance whatsoever.

*Porter v. Empire Fire & Marine Ins. Co., supra* at 279.

It was to avoid these inequities that the *Porter* line of cases adopted the rule summarized in *American Mut. Ins. Co. v. Commercial Ins. Co., supra* at 877:

An insured tort–feasor is to be considered as uninsured for the purposes of the statute to the extent that the amount available from the tort–feasor's insurer to any one injured person is less than the minimum coverage required by our financial responsibility law. . . . Thus a victim of an accident having uninsured motorist coverage in the minimum amount prescribed by statute would recover his damages by a combination of payment received from an insured tort–feasor supplemented by the uninsured motorist carrier up to the limits of the coverage required by the financial responsibility act, or from the uninsured motorist carrier alone if no funds are available from the tort–feasor. . . . Interpreted in this manner, an insured having uninsured motorist protection would receive the coverage he could reasonably expect under the provisions of RSA 268:15–a (Supp. 1975) and which the legislature intended he should receive.

The majority here argues that RCW 48.22.030 and .040 in effect provide a defense to the victims' own uninsured motorist policy carrier notwithstanding that carrier received a premium for the coverage and promised to provide it to its insured. It argues that this position is buttressed by two actions taken by the legislature. The first is the passage of Substitute House Bill No. 1348, 45th Session, 1st Ex. Sess. 1977, vetoed by the Governor July 15, 1977. According to the majority this amendment demonstrates that the existing law applicable to this case does not contemplate coverage to the so–called "underinsured"

motorist. The word "underinsured" used by the majority is not contained in our uninsured motorist statute. However, an ordinary man considering the word "underinsured" would surely think of a victim who receives some insurance, but not enough to fully compensate him for his injuries and losses. That, indeed, was the situation in all but three of the cases relied upon by the majority. In each of those cases but three, the persons seeking benefits under their uninsured motorist coverage policies had already received some compensation from the liability carrier of the offending vehicle.[1]

In this case, moreover, the two plaintiffs have received nothing whatsoever from either the offending motorist or his liability insurance carrier, which has denied any liability to the plaintiffs. So far as plaintiffs are concerned, the offending vehicle *is* uninsured, not underinsured. For all we know, the legislature, in enacting the statute on which the majority relies, may have intended to make certain that this court not construe our uninsured motorist statutes as the majority does now. The precautionary amendment need not and should not be read as constituting a mandate that RCW 48.22.030 and .040 be construed literally and without regard to the intent and purpose of the statute as we have heretofore construed it to aid the victims of an accident.

In this connection I would point out that the liability insurance carrier here paid out all of the insurance proceeds to two of the four injured persons, *deliberately* leaving two

---

[1]The three cases dealing with the same situation we face here, a plaintiff who has received no insurance funds whatsoever, are *Shelby Mut. Ins. Co. v. Smith,* 45 Ohio St. 2d 66, 341 N.E.2d 597 (1976); *Lund v. Mission Ins. Co.,* 270 Ore. 461, 528 P.2d 78 (1974); *Golphin v. Home Indem. Co.,* 284 So. 2d 442 (Fla. Dist. Ct. App. 1973). The *Shelby* court deferred to the definition of an "uninsured" vehicle provided by the insurance policy itself. The *Lund* and *Golphin* courts specifically relied on definitions of "uninsured" vehicles in their own statutes. We have no such definition. As recognized in *Golphin,* the absence of such a statutory definition leaves it to the court to define the term in light of the policy of its own statute. The Florida court thus acknowledged the validity of the result in the *Porter* line of cases where courts have defined "uninsured" vehicles in light of their own statutes.

injured persons without compensation. The insurance policy must therefore have implicitly recognized that no insurance would be available under that policy to some injured persons with valid claims. The policy itself recognized that, as to some injured persons, the vehicle would indeed be uninsured because no insurance proceeds at all would be available.

The majority also argues that the express provision in the statute for recovery against the uninsured motorist carrier in the case of an insolvent liability policy carrier indicates that there was no intention to cover the case of the underinsured motor vehicle causing the accident. As pointed out above, this is not a case of an underinsured vehicle. Even if it were, the inference drawn by the majority does not necessarily follow. It is unreasonable to argue, in effect, that the legislature intended, by enacting statutes to assure payment to the innocent victims of an accident, to have its meaning construed in such a way as to diminish or eliminate the protection thus afforded. If the legislature had any intention beyond merely addressing the problem of the insolvent liability insurer, it is more reasonable to assume it intended to leave to the courts the task of carrying out the intent and purpose of the statutes as new problems arise.

I agree with *Palisbo v. Hawaiian Ins. & Guar. Co., supra* at 13.

> Where the results of a literal application of certain statutory terms would be plainly at variance with the remedial purposes of the law, and obviously would be inconsistent with the legislative policy embodied within the statutory scheme, courts have followed the purpose, rather than the literal words of the statute.

We have adopted substantially the same rule in this state. *Amburn v. Daly, supra; Touchette v. Northwestern Mut. Ins. Co., supra.* I would follow that rule here.

I dissent.

WRIGHT, C.J., and HAMILTON and UTTER, JJ., concur with HOROWITZ, J.