[No. 28281.   Department Two.   April 11, 1941.]

WILLIAM H. HANEY, *Appellant*, v. J. A. CHEATHAM
*et al., Defendants,* J. DEWEY SHAFER *et al.,*
*Respondents.*[1]

[1] Reported in 111 P. (2d) 1003.

*Williams, Williams & Cooney,* for appellant.

*Graves, Kizer & Graves,* for respondents.

MILLARD, J.—William H. Haney, by complaint filed February 28, 1940, and amended complaint filed March 23, 1940, instituted an action against J. A. Cheatham and the marital community composed of J. A. Cheatham and wife; F. R. Zahniser and A. E. Warren, a co-partnership doing business under the name of Zahniser and Warren, and J. Dewey Shafer, to recover for personal injuries and property damage alleged to have been sustained as a result of the collision of plaintiff's automobile with a truck owned by Zahniser and Warren and operated by J. Dewey Shafer.

The two complaints alleged that, just prior to the accident, the truck of defendants Zahniser and Warren was proceeding north on Division street, an arterial highway in Spokane; that Cheatham was driving west in his automobile on Mission avenue approaching the

intersection of that avenue with Division street; that plaintiff Haney was following the truck. It was plaintiff's theory that Cheatham drove into the arterial highway without stopping and yielding right of way to plaintiff's automobile and the truck of Zahniser and Warren which plaintiff was following. Plaintiff alleged that Cheatham "obstructed the line of travel of plaintiff's automobile and the line of travel of the truck of defendants Zahniser and Warren." Plaintiff also charged that Shafer, the driver of the truck, was guilty of negligence in that, in endeavoring to avoid Cheatham's automobile, he swung his truck in front of plaintiff's automobile, which collided with the rear end of the truck.

On April 9, 1940, J. A. Cheatham paid to William H. Haney one thousand dollars, in consideration of which Haney executed a release or covenant not to sue which reads as follows:

"IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF SPOKANE

| | |
|---|---|
| WILLIAM H. HANEY,<br>Plaintiff,<br>vs.<br>J. A. CHEATHAM, and the community composed of J. A. CHEATHAM and VIOLA CHEATHAM, his wife; J. DEWEY SHAFER; F. R. ZAHNISER and A. E. WARREN, partners doing business as ZAHNISER & WARREN,<br>Defendants. | No. 104771<br>COVENANT NOT TO SUE |

"KNOW ALL MEN BY THESE PRESENTS, That I, WILLIAM H. HANEY, the plaintiff above named, of Spokane, Washington, for myself and all my legal representatives, in consideration of the sum of ONE THOUSAND ($1,000.00) DOLLARS, to me in hand paid by J. A. Cheatham and the community composed of J. A. Cheatham and Viola Cheatham, his wife, defendants above named, receipt and sufficiency whereof are

hereby acknowledged, do hereby, now and forever, covenant and agree not to sue or molest said defendants, J. A. Cheatham or the community composed of J. A. Cheatham and Viola Cheatham, his wife, upon and as to them only, to forthwith dismiss this or any other suits or proceedings which are now, or hereafter may be, pending upon, and forever refrain from instituting, pressing, collecting or in any way aiding or proceeding upon any and all claims, demands, causes of action, suits, proceedings or adjudications whatsoever, which I ever had, now have or may have against said J. A. Cheatham, or the community composed of J. A. Cheatham and Viola Cheatham, his wife, their estate or any of their legal representatives, for injuries, property damage, loss of services or support, expenses, costs, damages or in any manner whatsoever heretofore or hereafter arising out of any matter, cause or thing whatsoever, from the beginning of the world to and including the date hereof, and including, but without limitation of any of the foregoing, a certain accident, injury or damages claimed by me to have been sustained by me on or about the 17th day of January, 1940, substantially as alleged in the amended complaint herein.

"To obtain payment to me of the aforesaid consideration I do hereby expressly represent and warrant the following statements to be true: That I am now of full legal age; that I have neither made nor suffered any assignment or transfer whatsoever of any part of my said claim and am now sole and absolute legal and equitable owner of all thereof; that I rely solely upon my own judgment, belief and knowledge of the nature, extent and duration of injuries, disabilities and damages sustained by me, by virtue of any and all matters herein, or in said complaint stated whatsoever, and that no statements or representations made by said J. A. Cheatham or the community composed of said J. A. Cheatham and Viola Cheatham, his wife, or their surgeons or agents about said injuries, or otherwise, have influenced, or induced, me to execute or deliver this covenant.

"It is hereby expressly understood and agreed that this instrument is not intended as a release or dis-

charge of, nor as an accord and satisfaction with, any person whomsoever, but only as a covenant not to sue and to the effect that said J. A. Cheatham and the community composed of J. A. Cheatham and Viola Cheatham, hereby purchase peace and here hereby given peace upon any and all claims and matters whatsoever which have been or may be made against them by me; and that they, in making payment of said consideration for this covenant have done so solely to obtain such peace and do not thereby admit any liability on account of any of said claims or matter, but expressly deny all such liability whatsoever.

"I have executed and delivered this agreement due only to the facts and for the purposes herein receited, and also to the fact that it has been established that there is grave doubt that the defendant, J. A. Cheatham, was in any manner an actor or present at the time of the said accident, and it has been made to appear that even if said J. A. Cheatham was present or was an actor in any sense, it is highly doubtful if any act done or omitted by him was a cause, or a contributing cause, of the injuries received by me.

"The parties hereto authorize the court on the motion of either of them to enter an order of dismissal of this action as to the said defendants, J. A. Cheatham, and the community composed of J. A. Cheatham and Viola Cheatham, his wife, without the taxation of costs."

Under authority of the foregoing stipulation, on motion of defendants Cheatham, the trial court entered an order June 10, 1940, dismissing the action of Haney against J. A. Cheatham and the community composed of J. A. Cheatham and Viola Cheatham, his wife.

Following the execution of the release or covenant not to sue, plaintiff filed a second amended complaint, from which all reference to Cheatham or any third vehicle was omitted and Shafer was charged with negligence solely because, without giving any signal or intention so to do and within a distance of less than fifty feet from the intersection of Division street

and Mission avenue, he turned the truck to the left and into the inner lane of travel and abruptly stopped the truck in the path of plaintiff's automobile, as a result of which negligence plaintiff's automobile collided with the truck.

Shafer counterclaimed against Haney and sought recovery against the Cheathams for personal injuries. His employers, Zahniser and Warren, sought recovery in the same manner for damage to the truck. Shafer, Zahniser, and Warren, as an affirmative defense to the claim of Haney, pleaded contributory negligence and further defended on the ground that, if Shafer were negligent, he and Cheatham were joint tort-feasors, and that the release given to J. A. Cheatham and the marital community composed of Cheatham and wife for a consideration of one thousand dollars released defendants Shafer, Zahniser, and Warren from all liability to plaintiff Haney.

The cause was tried to the court, sitting with a jury. The jury first returned two verdicts. One was in favor of the plaintiff against Shafer, Zahniser, and Warren in which the plaintiff was awarded for personal injuries the sum of one dollar and for "damage to automobile in the sum of $0." The second verdict was in favor of defendants Shafer, Zahniser, and Warren on cross-complaint; the material portion of that verdict reads as follows:

" . . . find for the defendants and against the cross-defendants Cheatham and wife and assess their damages as follows:

"To J. Dewey Shafer for personal injuries in the sum of ($0) Dollars,

"To Zahniser and Warren, a partnership, for damages to automobile in the sum of $58.93."

The trial court refused to receive these verdicts on the ground that they were inconsistent. The jury again retired and later returned verdicts as follows: One

in favor of the defendants; one in favor of plaintiff Haney on cross-complaint of Shafer, Zahniser, and Warren; and one, which the jury first returned, in favor of Zahniser and Warren on their cross-complaint for damages to their automobile in the sum of $58.93 and denying recovery to Shafer for personal injuries. That is, as to plaintiff the verdict was in favor of defendants Shafer, Zahniser, and Warren, and as to the cross-complaint in favor of Zahniser and Warren for property damage as against the Cheathams, with no award to Shafer for personal injuries. These verdicts were received and filed and judgment entered in consonance therewith. Plaintiff appealed.

The first question presented by this appeal is whether the instrument quoted above should be construed as a covenant not to sue or as a release.

We are committed to the rule that, when an instrument like that in the case at bar is executed for the benefit of one joint tort-feasor, it is a covenant not to sue if it gives to the joint tort-feasor in return for the payment made by him nothing more than a right of action against the covenantor in the event of the breach of that agreement by the institution of an action; but it is a release if it may be pleaded as a defense to defeat the action brought by the covenantor.

In *Rust v. Schlaitzer,* 175 Wash. 331, 27 P. (2d) 571, the action arose out of a collision between three automobiles at the intersection of two streets in Seattle. The plaintiff John W. Rust was driving north on east Marginal way. A bus of defendant transportation company was following thirty feet behind the Rust car. Defendant Schlaitzer was driving east on Michigan street. Schlaitzer started to cross the intersection in front of the Rust car. Rust applied his brakes and succeeded in stopping his car before colliding with the Schlaitzer car. However, the bus continued on its

course and ran into the Rust car, shoving it forward against the Schlaitzer car. The Rust and Schlaitzer cars were damaged, and Rust was slightly injured. The defendant casualty company carried the liability insurance required by statute of the transportation company. In consideration of the payment to him of the sum of two hundred dollars, Rust executed an agreement that he would never sue the transportation company or the casualty company for or on account of any claim for damages which he individually and he and his wife collectively might have by reason of the automobile accident just described; and that this covenant not to sue " 'may be pleaded as a defense to any action or other proceedings' " which might be instituted by Rust and wife against the transportation company or against the casualty company in breach of the covenant. The covenantor expressly reserved the right to sue Schlaitzer for and on account of any claim for injuries which Rust and wife might have against him by reason of the accident described above.

Thereafter, Rust commenced an action for damages against Schlaitzer, who by cross-complaint brought the transportation and casualty companies into the action, alleging that the damages were the result of the bus driver's negligence. Trial of the cause to the court resulted in findings that Schlaitzer was free from negligence, that the bus driver was negligent, and that the agreement executed by Rust constituted a release. Judgment was entered dismissing Rust's action against Schlaitzer and awarding Schlaitzer fifty dollars in damages against the transportation and casualty companies. Plaintiff Rust and cross-defendants transportation company and casualty company appealed. We held that Schlaitzer and the bus driver were joint tortfeasors; that, if the bus driver had not been following too close to the Rust car, he could have avoided the

collision by stopping when Rust stopped; and that, if Schlaitzer had yielded the right of way to Rust, the latter would have proceeded on his course without injury by the bus. That is, Rust had a right of action against the company and Schlaitzer and could sue them jointly or severally; and that Rust could maintain the action against Schlaitzer unless the agreement above described constituted a release.

Appellants contended in that case, as appellant argues in the case at bar, that the instrument was not a release, but a covenant not to sue. To determine whether an agreement falls within one class or the other, we may, in so far as it affects joint tort-feasors, look to the consideration of the agreement, its effect, and the circumstances attending its execution. The reason underlying the refusal of the courts to accept the recitals of the parties to the agreement as a conclusive determination of its character, is that the formal language of a covenant not to sue could be employed in a release and thereby circumvent a salutary rule of law.

Appellants in *Rust v. Schlaitzer, supra,* insisted, as does appellant in the case at bar, that *Randall v. Gerrick,* 93 Wash. 522, 161 P. (2d) 357, L. R. A. 1918D, 179, sustains the position that the instrument in question is a covenant not to sue. In distinguishing *Randall v. Gerrick, supra,* we stated that it went no further than to hold that the release for a *nominal* consideration of one who is in no sense a joint tort-feasor does not operate to release the real joint tort-feasor; that, in the case then before us, we had what in substance and effect was a release of one joint tort-feasor for a consideration which reasonably compensated the releasor for the entire damage sustained. We cited with approval *Hawber v. Raley,* 92 Cal. App. 701, 268 Pac. 943, which presented the question whether an agreement,

almost the same as the agreement in *Rust v. Schlaitzer*, *supra,* was a release or a covenant not to sue. The court said:

"It would therefore appear to be a rule of construction that where two or more tort-feasors are involved and the document is such that the covenantee may plead the same in abatement of any action which the covenantor might subsequently commence in breach of the obligation contained in said document and the remedy thereunder is not restricted to an action on the covenant, the document constitutes a release and satisfaction, and not a mere covenant not to sue. An inspection of the document in question here discloses that by its very terms it was agreed 'that should the said Mrs. E. W. Hawber at any time in the future institute claim, demand, or suit at law against the said Mrs. Harriet E. Emery the said Mrs. Harriet E. Emery may plead this agreement in full satisfaction and release of said claim, demand, or suit at law,' and it would follow, therefore, under the rule of the authorities above cited, that said document constitutes a full release and satisfaction for the injuries received by plaintiff, and that the same is not merely a covenant not to sue."

We held that the agreement executed by Rust was, in legal effect, a release of one joint tort-feasor, and that it operated as a release of the others.

In the case at bar, when the agreement was executed, appellant had instituted an action against the Cheathams and respondents, and the release executed by Haney expressly authorized the court to dismiss the action then pending. The blanket authorization for dismissal of the pending litigation was recognized by the court when presented by counsel for defendants Cheatham, and the action was dismissed as to the Cheathams.

The trial court clearly construed the instrument in the light of the facts and circumstances surrounding its execution to ascertain whether it was, in effect,

given for a consideration which was reasonably compensatory. The rule applicable to releases running in favor of one joint tort-feasor differs from the rule applicable to releases for the use of one joint debtor. Where the amount of a joint obligation is fixed, that is, by the execution of a contract or a note, it is an easy matter to credit to the full amount of the obligation the amount paid by one of the joint obligors. However, where the obligation is the reimbursement of one for injury, the rule would be different. The court can not say that the one thousand dollars paid to appellant by defendants Cheatham is a complete satisfaction for the injuries appellant sustained or less than the amount to which he was entitled. As the loss by its very nature can not be fixed, the application to joint tort-feasors of the rule applicable to joint debtors would permit a plaintiff to make a settlement with one of several financially responsible joint tort-feasors for one thousand dollars, with the second for the same amount, and then bring an action against the third in the hope that he might obtain a verdict that his injuries were such that he was entitled to compensation therefor in excess of the two thousand dollars he had already received.

In *Hawber v. Raley*, 92 Cal. App. 701, 268 Pac. 943, the plaintiff, while riding as a passenger in a friend's car, was injured in a collision with another car. The company which carried the insurance against loss of the driver of the car in which the plaintiff was riding, paid to her $380.27 while she was in the hospital to enable her to meet her expenses. The release executed by plaintiff, it was contended in that case, was a covenant not to sue. The plaintiff insisted that the amount paid to her was not full compensation and undertook to prove that it was recognized by the parties to be inadequate. The appellate court of California observed

that the trial court, as in the case at bar, instructed the jury to consider the several elements of plaintiff's damages, her pain and suffering, her hospital expenses, and then said:

"Presumably the jury followed the instructions and included these elements of damage in its verdict. It would seem clear, therefore, that if the judgment herein is allowed to stand, plaintiff will be twice compensated for the same elements of damage. True, she may have received from Mrs. Emery only a part of the damages accruing from her injuries, but, as said in *Tompkins v. Clay Street R. R. Co.* [66 Cal. 163, 4 Pac. 1165], *supra*: 'Damages resulting from the same wrongful transaction are ordinarily inseparable; she could not recover part from one and part from the other defendant'; and again in *Flynn v. Manson* [19 Cal. App. 400, 126 Pac. 181], *supra,* as follows: 'However conflicting may be the current of authorities in respect to the proper construction of a release of the kind in question, it is a well-settled principle of law that in actions *ex delicto* plaintiff can recover compensation but once. Where the demand is unliquidated, as in the case here, the court cannot hold that the payment of any sum, however small, in consideration of a release does not or can not operate as compensation for the alleged injuries.' " *Hawber v. Raley,* 92 Cal. App. 701, 268 Pac. 943.

The supreme court of Michigan in *Moffit v. Endtz,* 232 Mich. 2, 204 N. W. 764, on similar facts, said:

"The *McBride Case* [132 Mich. 176, 93 N. W. 243, 61 L. R. A. 445, 102 Am. St. 416, 1 Ann. Cas. 61] is decisive of the question. After reviewing authorities, it was there held:

" 'We are of the opinion that the better rule is that contended for by defendants in this case; that to admit of a settlement with one tort-feasor under such circumstances as are here presented, and to hold that a reservation such as is here attempted saves the right as to other tort-feasors, would open the door for the plaintiff in any case to acquire by successive settlements

more than just compensation; or, as is said in *Brown v. Kencheloe,* 3 Cold. (Tenn.) 192: "The plaintiff in many instances would operate upon the fears of the defendants and get from each full damages for the trespass committed." ' "

*North Pacific Public Service Co. v. Clark,* 185 Wash. 132, 52 P. (2d) 1255, in which was presented the question whether a release of one of several joint debtors released the others and appellant relied on authorities having to do with the release of one of several joint tort-feasors, we emphasized, as follows, the reason for the distinction between a covenant not to sue a joint debtor and a covenant not to sue a joint tort-feasor.

"Attention has been called to the fact that, in this state, the release of one joint tort feasor, even with the reservation that it is not to be considered as a release against any other of the joint tort feasors, operates as a release of all. There is a reason in tort cases why that should be the rule, which does not exist in the present case. In the case of tort, there is no fixed standard of liability, and the right of a tort feasor, not released, to enforce contribution against the one released would be difficult and impractical. But that is not the case where there is a standard of liability which may be sustained by proof."

The rule is that, even if the writing be appropriately drawn to make it a covenant not to sue, the court, nevertheless, must construe it in the light of the facts and circumstances surrounding its execution to ascertain whether it was, in substance and effect, given for a consideration which is reasonably compensatory. The settlement for one thousand dollars is conceded. Whether this was adequate, is dependent upon whether the appellant could prove the negligence of Cheatham, the extent of appellant's injuries, his medical expenses, and the extent of his pain and suffering. Obviously, the jury deemed the amount adequate for the injuries sustained by appellant. The first verdict, which was

not accepted, denied to Haney any compensation for damage to his car and awarded him only one dollar for personal injuries.

Appellant may not be heard to complain of the court's instruction that the instrument in question is a release, nor may appellant assign as error the refusal of the court to give certain proposed instructions. Where instructions concerning which errors are assigned are not set forth in the brief—the instructions are absent from the brief—the assignments are not entitled to consideration. *Scott v. Pacific Power & Light Co.*, 178 Wash. 647, 35 P. (2d) 749.

The court clearly instructed the jury that only if it found from the evidence that the collision was due to the negligence of Shafer and the concurring negligence of Cheatham that the appellant, "having released Cheatham and wife, such act releases" respondents from any liability and that Haney would not be entitled to recovery against either Shafer or the members of respondent partnership. The court's instruction, of which appellant complains, that the instrument was a release, became immaterial when the jury found that Shafer was not negligent and that he and Cheatham were not joint tort-feasors, but that Cheatham alone caused Haney's injury.

Appellant next assigns as error the receiving and causing to be filed of a verdict marked 2A for respondents after the court had refused to receive verdict form 1A and after the jury had deliberated further under the directions of the court.

It is plain that, in a three-car collision, as in the case at bar, each of the three drivers may be guilty of negligence and each may be free from negligence. In such a situation, any combination of findings might have been sustained by the evidence. The usual instructions as to negligence, contributory negligence, and proxi-

mate cause were given by the court. Under those instructions, the jury could not have returned a verdict against any of the parties unless the jury found that party guilty of negligence and the party in whose favor the verdict was returned was not guilty of contributory negligence.

The jury returned two verdicts. The first awarded the respondents a verdict against the cross-defendants Cheatham for damage to respondents' truck, which is a finding that the cross-defendants were guilty of negligence and that Shafer, the driver of respondents' truck, was not guilty of negligence. The second verdict awarded to appellant damages for personal injuries in the sum of one dollar only and damage to automobile in the sum of no dollars. Plainly, this verdict ran against the respondents alone, as the Cheathams had been released by appellant and dismissed from the action. It is patent that the second verdict is not consistent with the first verdict; for, if it had been for a substantial amount, it necessarily must have been predicated upon a finding that Shafer was guilty of negligence. There is no contention on the part of appellant that, under the circumstances of this case, Shafer might be free of negligence as to the Cheathams but guilty of negligence as to Haney. The question was whether Cheathams' car or some other car cut across in front of Shafer in such a way that he could not act otherwise than he did. If he became involved, as he undoubtedly contended under the pleadings and as the jury found, he could not extricate himself.

On being apprised that the jury proposed to return one verdict in favor of Shafer against Cheatham, which was a determination that Shafer was free from negligence, and another verdict in favor of Haney against Shafer, which was a finding that Shafer was guilty of

negligence, the trial court informed the jury that the verdicts seemed to be inconsistent, reread certain instructions, and directed the jury to retire for further deliberation. In brief, the instructions were to the effect that a verdict in favor of Shafer against Cheatham must be based upon a finding that Shafer was free from negligence, while a verdict against Shafer or his employers in favor of Haney must be based upon a finding that Shafer was guilty of negligence. We do not find that any new instructions were given to the jury.

Appellant is in no position to complain that he was prejudiced by the court's refusal to accept the second verdict for one dollar in favor of appellant, as that verdict is, in fact, for the respondents. A verdict for one dollar in favor of the plaintiff in a personal injury action, when the jury knows that the plaintiff sustained damages in excess of that sum, is a verdict for the defendant; and is merely an artifice to release the plaintiff from the burden of costs of the action. *Snyder v. Portland R. Light & Power Co.*, 107 Ore. 673, 215 Pac. 887.

The court's right to send the jury back to consider further of its verdict is not ended until the verdict has been accepted and filed.

"The law allows the jury all reasonable opportunity, before their verdict is put on record and they are discharged, to discover and declare the truth according to the judgment. Before they have been dismissed from their relation to the case as jurors in it, their power over their verdict remains, and their right to alter it so as to conform to their real and unanimous intention and purpose. And it may be stated generally that when a jury return an informal, insensible, or a repugnant verdict, or one that is not responsive to the issues submitted, they may be directed by the court to reconsider it and bring in a proper verdict; and this may be done with or without the consent of counsel

and should be done whether requested or not. The rule applies to special as well as general verdicts. The practice is really only an application of the settled rule that until the verdict has been recorded, or the jury have been discharged as unable to agree, their connection with the case has not come to an end." 27 R. C. L. 890.

In *Beglinger v. Shield,* 164 Wash. 147, 2 P. (2d) 681, we said:

"The jury had not been discharged, nor had the verdict been received or filed. The verdict had merely been read. The trial judge apparently was of the opinion that he was powerless to have the jury correct the verdict. In this he was in error. Until a verdict is received and filed for record, the trial court may send the jury back to consider and clarify or correct mistakes appearing on the face of the verdict.

" 'As long as the jurors, under the direction of the court, exercised according to law, have the case in their hands, it is within their province to change or modify the verdict.' *Bino v. Veenhuizen,* 141 Wash. 18, 250 Pac. 450, 49 A. L. R. 1297."

The statute is a sufficient answer to any question as to the right of the court to ascertain whether a verdict submitted to it expresses the true intent of the jury and the right to require the jury to return to the jury room to reconsider a defective verdict and bring in a proper verdict.

"If the verdict be informal or insufficient, it may be corrected by the jury under the advice of the court, or the jury may again be sent out." Rem. Rev. Stat., § 360 [P. C. § 8522].

"When the verdict is given, and is such as the court may receive, and if . . . the jury be not again sent out, the clerk shall file the verdict. The verdict is then complete. . . ." Rem. Rev. Stat., § 361 [P. C. § 8523].

■ The trial court did not err in requiring the jury to return to its room to further consider its verdict.

The court did not intimate what verdict should be returned. The record does not disclose that the court said, or in any way indicated, which of the two verdicts should stand and which should be abandoned.

The judgment is affirmed.

ROBINSON, C. J., BEALS, SIMPSON, and JEFFERS, JJ., concur.

[1]Reported in 111 P. (2d) 1011.