[No. 5068–1.   Division One.   July 24, 1978.]

EUGENE KO, *Individually and as Administrator, Appellant,* v. ROYAL GLOBE INSURANCE COMPANY, *Respondent.*

*Thomas J. Chambers, Inc., P.S.,* for appellant.

*Elvidge, Veblen, Tewell, Bergmann & Thorpe* and *Stephen P. Larson,* for respondent.

CALLOW, J.—The plaintiff, Eugene Ko, appeals from the summary judgment of dismissal of his complaint against his insurer, the defendant Royal Globe Insurance Company. The plaintiff asserts that if the damages incurred by an injured party exceed the amount of the tort–feasor's coverage, the injured party may look to the uninsured motorist provision in his own policy for additional coverage. Prior to argument of the motion, counsel for the parties entered into a stipulation as to the essential facts as follows:

1. That on or about November 21, 1973, Norma Ko was fatally injured in an automobile collision when she was struck by a vehicle operated by Cynthia Carol

Peringer at Cascadia Avenue South and South Court Street, Seattle, King County, Washington.

2. The plaintiff alleges that the death of Norma Ko was caused by the negligence of Cynthia Peringer;

3. That at the time of the above–described automobile collision, Cynthia Peringer had automobile liability insurance coverage issued by Farmers Insurance Group in the sum of $50,000; said $50,000 has been paid to the plaintiff;

4. The plaintiff alleges that the damages sustained by the plaintiff, Dr. Eugene Ko, the estate of Norma Ko, and the four children of Norma Ko greatly exceed the sum of $50,000;

5. That at the time of the automobile collision in question, the defendant, Royal–Globe Insurance Company, had in full force and effect its insurance policy number RDL 175997 providing uninsured motorist benefits applicable to this automobile accident naming Norma Ko and Eugene Ko as named insureds.

The Royal Globe policy contained uninsured motorist provisions on the vehicle in which Norma Ko was riding and on two other vehicles, each in the sum of $15,000. Thus, plaintiff wishes to stack this additional $45,000 of insurance on top of the $50,000 he has recovered from Ms. Peringer's insurer. The plaintiff filed a complaint to compel arbitration against the defendant Royal Globe Insurance Company to establish the amount of damages. The defendant–insurer moved for summary judgment of dismissal contending that Norma Ko was not injured by an uninsured motorist under the terms of the policy. This motion was granted and the court entered its order dismissing the plaintiff's complaint to compel arbitration with prejudice and with costs to the defendant–insurer.

The issue presented is whether an insured can recover under the uninsured motorist provision of his own automobile insurance policy as a result of an automobile accident with a tort–feasor who has in effect at the time of the accident a valid liability insurance policy in an amount in excess of the statutory minimum required by RCW

46.29.490(2)(b) and RCW 48.22.030, and under which policy the insured has recovered the amount of $50,000.

The defendant asserts that the issue may be simply stated as to whether uninsured means "not insured" or "under–insured."

There are five possible positions which can be taken upon this issue. We will set forth these positions and illustrate them with examples in which we will assume (1) minimum liability and uninsured motorist coverage is $15,000 per person and $30,000 per accident; (2) there are three victims, A, B, C; and (3) that each victim has sustained $30,000 in damages:

1. "Uninsured" means no insurance. Example: The tort–feasor comes to Washington from another state where only $6,000 worth of insurance is required. The tort–feasor has $6,000 worth of liability insurance. A, B and C each recover $2,000 from the tort–feasor's liability insurance; each has no recovery from uninsured motorist coverage. This position is supported in the modern cases only by dicta found in *Harsha v. Fidelity Gen. Ins. Co.,* 11 Ariz. App. 438, 465 P.2d 377 (1970).

2. "Uninsured" means less coverage than the statutory minimum. If the tort–feasor has the statutory minimum liability coverage, he is not uninsured, and no uninsured motorist coverage is available; if the tort–feasor has less than the minimum, he is considered uninsured. Example: A, B and C each get $10,000 from the tort–feasor's liability coverage, no uninsured motorist coverage is available to the victims. This position is taken by *Emery v. State Farm Mut. Auto. Ins. Co.,* 195 Neb. 619, 239 N.W.2d 798 (1976), and *Taylor v. Preferred Risk Mut. Ins. Co.,* 225 Cal. App. 2d 80, 37 Cal Rptr. 63 (1964). If the tort–feasor had less than the statutory minimum insurance coverage, then the difference between that coverage and the plaintiff's damages, up to the statutory minimum, would be made up by uninsured motorist coverage. If, as in the first example, the motorist had $6,000 worth of insurance coverage, each of A, B and C would get $2,000 from this liability coverage and

would receive $13,000 from his own uninsured motorist coverage.

3. "Uninsured" means unable to pay one or more victims the minimum statutory amount. If the tort–feasor has the statutory minimum liability coverage, but due to a multiplicity of victims each cannot receive the statutory minimum recovery, uninsured motorist coverage is available up to the statutory minimum or the amount of the plaintiff's damages, whichever is less. Example: A, B and C each get $10,000 from the tort–feasor's liability insurer and each collects $5,000 from his own uninsured motorist coverage. This position was taken in *Porter v. Empire Fire & Marine Ins. Co.,* 106 Ariz. 274, 475 P.2d 258, *modified on other grounds,* 106 Ariz. 345, 476 P.2d 155 (1970); *Palisbo v. Hawaiian Ins. & Guar. Co.,* 57 Hawaii 10, 547 P.2d 1350 (1976); *American Mut. Ins. Co. v. Commercial Union Ins. Co.,* 116 N.H. 210, 357 A.2d 873 (1976); *Gorton v. Reliance Ins. Co.,* 137 N.J. Super. 558, 350 A.2d 77 (1975), *cert. granted,* 70 N.J. 273, 359 A.2d 485 (1976). It has been specifically rejected in *Emery v. State Farm Mut. Auto. Ins. Co., supra; Kemp v. Fidelity & Cas. Co.,* 504 S.W.2d 633 (Tex. Civ. App. 1973), *rehearing denied,* 512 S.W.2d 688 (Tex. 1974), and by *Travelers Ins. Co. v. Bouzer,* 39 Cal. App. 3d 992, 114 Cal. Rptr. 651 (1974).

4. "Uninsured" means the plaintiff is unable to recover from the defendant as much as the plaintiff's uninsured motorist coverage. The tort–feasor has the statutory minimum coverage, but for whatever reason cannot pay for all the victims' damages; the victims' uninsured motorist coverage is available, subject to a setoff for any recovery made, so that the victims' total recovery will equal the amount of uninsured motorist coverage which he has as long as it does not exceed his damages. Example: Here assume A, B and C have each paid extra premiums for uninsured motorist coverage up to $18,000 per person. A, B and C each get $10,000 from the tort–feasor's liability insurer and $8,000 from his own uninsured motorist coverage. This approach has been specifically rejected in *Detrick v. Aetna Cas. & Sur. Co.,*

261 Iowa 1246, 158 N.W.2d 99 (1968), and *Smiley v. Estate of Toney,* 44 Ill.2d 127, 254 N.E.2d 440 (1969). However, this result would reflect what the average insured hopes to have as coverage. It guarantees that an injured party will recover the amount of uninsured motorist coverage which he has on his own policy.

5. "Uninsured" means unable to pay for all of the plaintiff's damages. The tort–feasor has at least the statutory minimum coverage, the victims' uninsured motorist coverage is available in addition to any liability limit so long as the total payment does not exceed the total amount of damages. Example: A, B and C again pay extra for $18,000 uninsured motorist coverage and each recovers $10,000 from the tort–feasor's liability insurer, and $18,000 from his own uninsured motorist coverage. This position was rejected by *Wilbourn v. Allstate Ins. Co.,* 293 Ala. 466, 305 So. 2d 372 (1974), and *Taft v. Sweeney,* 149 N.J. Super. 282, 373 A.2d 712 (1977).

The plaintiff argues that he is entitled to recovery since the tort–feasor was unable to pay for all of his damages. This is the approach reflected as position No. 5. None of the other positions described would sustain the appeal, as the plaintiff has already received more than either the state statutory minimum or his total amount of uninsured motorist coverage.

The opinion in *Strunk v. State Farm Mut. Auto. Ins. Co.,* 90 Wn.2d 210, 580 P.2d 622 (1978), was filed while this opinion was first in circulation. There, five members of a family were either killed or injured when their car was hit by the tort–feasor's car. The tort–feasor had the minimum liability insurance required by Washington law, and this was sufficient to cover the damages of only two of the plaintiff family members, leaving three uncompensated. Suit was brought by the injured plaintiffs against their own insurance carrier on the basis that their uninsured motorist coverage should make up the difference between what they recovered and the statutory minimum. The decision declined to adopt the position we have set forth as position

No. 3, and held that such an interpretation of the word "uninsured" must come from the legislature. Whether the argument is advanced that "uninsured" means unable to pay all of the victims of an accident the statutory minimum amount,[1] or unable to pay all of the damages, the answer must be that such an interpretation of the term "uninsured" is contrary to its plain meaning and such a change in the statute can be made only by the legislature.[2]

The judgment is affirmed.

RINGOLD, J., concurs.

---

[1] As in *Strunk v. State Farm Mut. Auto. Ins. Co., supra.*

[2] *Simonette v. Great Am. Ins. Co.,* 165 Conn. 466, 470–73, 338 A.2d 453, 454–56 (1973), stated in part:

"It is the plaintiff's contention that these statutes and regulations . . . entitled an injured party who has an uninsured motorist policy and receives a sum less than the amount specified under that policy from an insured tort–feasor to the difference between what he received from the tort–feasor and the amount of his own uninsured motorist policy provision. With this contention we cannot agree. The substance of the plaintiff's claim is that the word 'uninsured' as used in all of the applicable statutes and regulations, as well as in the plaintiff's insurance policy, must be construed to mean 'underinsured' in relation to the plaintiff's injury. We find no ambiguity, however, in the statutes or regulations which would allow us to interpret into them such a significant addition to the coverage required.

". . . The terms 'automobile liability insurance,' 'insured,' and 'uninsured' are words of common meaning and understanding. . . . 'Underinsurance' means 'insurance in an amount insufficient to cover the possible loss or to satisfy the requirements of a coinsurance clause.' 'Insured' means 'the owner of a policy of insurance.' 'Un' is simply a prefix meaning 'not.'

". . .

". . . A due regard for the differing functions of the legislative and judicial branches of government requires that the courts refrain from rewriting, under the pretext of interpretation, the clearly expressed language of a legislative enactment which the court deems to be preferable to that which the legislation requires. . . . 'Uninsured' clearly is not the same as 'underinsured' and '[a] court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity, and words do not become ambiguous simply because lawyers or laymen contend for different meanings.' . . .

". . . Furthermore, the adoption of such a specific expansion of the scope of a statute relating to an extensively regulated industry is one particularly appropriate for further legislative consideration and action rather than implementation by judicial fiat."

WILLIAMS, J. (concurring)—I concur because *Strunk v. State Farm Mut. Auto. Ins. Co.*, 90 Wn.2d 210, 580 P.2d 622 (1978) controls.