85 P.3d 939 (2004)
120 Wash.App. 393
John MAGUIRE and Patricia Maguire, husband and wife and the marital community composed thereof, Respondents,
v.
Steven A. TEUBER and Jane Doe Teuber, husband and wife and the marital community composed thereof; William W. Hadsall and Jane Doe Hadsall, husband and wife and the marital community composed thereof; and Defendants,
The State of Washington, Appellant.
No. 51484-9-I.
Court of Appeals of Washington, Division 1.
March 8, 2004.
*940 Jennifer Meyer, Office Of The Attorney General, Olympia, WA, for Appellant.
Anthony Dougherty, Attorney At Law, Everett, WA, for Respondents.
AGID, J.
The State of Washington, one of three defendants in this case, appeals the trial court's order denying its motion to dismiss the other two defendants after they settled with the plaintiff. The settlement is memorialized in a covenant not to execute, which the trial court determined did not release the settling defendants. We hold that the covenant not to execute does operate as a release, and we reverse and remand to dismiss the settling defendants.

FACTS
In October 1999, Steven Teuber rear-ended John Maguire on Interstate 5 while driving a vehicle owned by William Hadsall. Maguire was severely injured. In November 2000, Maguire and his wife (collectively Maguire) sued Teuber and Hadsall. In August 2001, Maguire settled with both defendants, and the parties signed a covenant not to execute.[1] In the covenant, Teuber and Hadsall agreed to pay Maguire $100,000, and Maguire promised not to execute or otherwise seek to collect any judgment entered in the pending lawsuit against Teuber and Hadsall. In April 2002, Maguire amended his complaint to bring faulty highway design claims against the State of Washington.
In October 2002, the State moved to dismiss Teuber and Hadsall as parties in the lawsuit. The State argued their continued presence in the case was designed to create joint and several liability among the three defendants. The trial court strictly interpreted the applicable statute and denied the motion. A commissioner of this court denied discretionary review, but we later granted the State's motion to modify that ruling.

DISCUSSION
Before the Legislature adopted the Tort Reform Act (TRA) in 1986,[2] concurrent and successive tortfeasors were held jointly and severally liable.[3] The TRA changed this general rule, abolishing joint and several liability in favor of proportionate liability in most circumstances.[4] But the statute continues to require joint and several liability in actions involving a faultless plaintiff and multiple tortfeasors.[5] In such a case, defendants against whom judgment has been entered are jointly and severally liable for the plaintiff's *941 total damages.[6] If a plaintiff has released a defendant, that defendant is not jointly and severally liable with his co-defendants,[7] and he has no liability for contribution.[8]
Because of this statutory framework, the State in the present case risks joint and several liability for the damages caused by Teuber and Hadsall if all three are parties at trial.[9] The State seeks to avoid this liability, arguing that the parties' covenant not to execute limits Teuber and Hadsall's liability to $100,000 regardless of what damages the jury imposes after trial. The State also contends that Teuber and Hadsall's continued presence in the litigation puts the State at a disadvantage because they are disinterested defendants who will not adequately defend Maguire's claims.
The central issue in this case is the meaning of "release" as it is used in the TRA. Statutory interpretation is a question of law that we review de novo.[10] In interpreting a statute, we examine its language as well as that of closely related statutes in light of the underlying legislative purpose.[11] RCW 4.22.060 sets forth the types of arrangements that may constitute a settlement and treats as equivalent a "[a] release, covenant not to sue, covenant not to enforce judgment, or similar agreement[.]" RCW 4.22.070, the statute imposing joint and several liability, refers to "release" not as a noun but as a verb, providing that "[j]udgment shall be entered against each defendant except those who have been released[.]" Read as a whole,[12] this statute suggests that releases, covenants and "similar agreements" all constitute "releases" for purposes of determining who had been "released" under RCW 4.22.070. As such, a covenant not to execute, signed by the parties to document a settlement, is one type of agreement that will release a party. Scholars agree with this interpretation.[13]
Maguire argues that "release" should be strictly defined because RCW 4.22.070 is in derogation of the common law and must receive a narrow and restrictive construction.[14] But the statute uses the word "release" to refer to all of the "similar" settlement agreements enumerated in RCW 4.22.060 used to memorialize a settlement in which the settling defendants have no further liability. This interpretation is consistent with the Legislature's intent.[15]
This interpretation is also consistent with case law. The Washington Supreme Court has generally treated a settlement as synonymous with a release for joint and several *942 liability purposes. Before the TRA, the court held that a covenant not to execute was a binding settlement that left no justiciable issues to be resolved, and therefore the settling defendant must be dismissed.[16] After the TRA, the Supreme Court interpreted RCW 4.22.070 to require that "[s]ettling parties, released parties, and immune parties are not parties against whom judgment is entered and will not be jointly and severally liable[.]"[17] In another case, the court described the statutory scheme and concluded that "settling, released defendants do not have judgment entered against them within the meaning of RCW 4.22.070(1), and therefore are not jointly and severally liable defendants."[18]
The settlement document in this case has the practical effect of releasing the defendants. We recognize that the covenant attempts to keep Teuber and Hadsall in the lawsuit by referring to the possibility that judgment will be entered against them and that it expressly states it is not to be construed as benefiting the State in any way. But the covenant also expressly provides that the parties are settling "for the purpose of avoidance of the uncertainties, inconvenience, and expenses of the pending lawsuit[.]" Moreover, the covenant states that it "is intended to constitute a complete resolution of all claims by the plaintiffs against defendants Teuber and Hadsall under RCW 4.22.060 such that any and all contribution claims against those defendants will be extinguished by this settlement."[19] This is release language. It cannot be construed any other way. The fact that Maguire did not specifically "release" the defendants is irrelevant; what matters is the covenant's operative effect.[20] To require that the parties use the word "release" to invoke RCW 4.22.070 exalts form over substance and conflicts with the legislative purpose.
Legal scholars who have addressed this issue reach the same conclusion. Professor Cornelius J. Peck noted that RCW 4.22.070 prompted plaintiffs' attorneys to attempt to
avoid losses in prejudgment settlements by agreeing with a potential defendant not to enforce or execute a judgment later entered against that person. The strategy is to keep the party with whom the agreement is reached as a defendant until judgment is entered. The plaintiff hopes that this will prevent deduction of that party's share of damages from the total damages for which all defendants will be jointly and severally liable. The party with whom the agreement is made will have a contractual right precluding enforcement of the judgment against him....[[21]]
Peck observes that while this strategy is imaginative, it "will probably fail" because it wrongly assumes that a contract not to execute is not a release within the meaning of RCW 4.22.070.[22] He also notes that, before the TRA's enactment, courts treated contracts not to execute as releases or settlements even though the agreement stated that it was only a contract not to enforce a judgment.[23]
Agreeing with Peck, Professor Gregory C. Sisk wrote that the term "judgment" in RCW 4.22.070(1)(b)
plainly denotes an adverse ruling with concrete, detrimental consequences for the judgment-debtor. A defendant who had previously obtained a settlement with a covenant preventing execution of the judgment cannot truly be said to have had an adverse judgment entered against it.... In sum, only those defendants truly subject to "an involuntary adverse judgment" remain in the boat together when the lawsuit comes to shore for entry of judgment.[[24]] *943 Sisk concludes that a court should refuse to enter judgment against a party who entered into a covenant not to execute.[25] Here, judgment should not be entered against Teuber and Hadsall since their settlement constituted a "complete resolution of all claims." The covenant not to execute released the defendants, and they must be dismissed from the lawsuit. We reverse and remand for further proceedings consistent with this opinion.
ELLINGTON and COLEMAN, JJ., concur.

APPENDIX

COVENANT NOT TO EXECUTE
THIS AGREEMENT made on this day, by and between JOHN MAGUIRE and PATRICIA MAGUIRE, (hereinafter jointly referred to as plaintiffs), and STEVEN A. TEUBER and JANE DOE TEUBER, husband and wife, and WILLIAM W. HADSALL and JANE DOE HADSALL, husband and wife (hereinafter referred to as defendants).

RECITALS
Whereas, plaintiffs have separate claims against defendants arising out of an accident which occurred on October 1, 1999, on Interstate 5 in the vicinity of Milepost 147, Seattle, King County, Washington; and
Whereas, the accident of October 1, 1999 caused severe injuries to John Maguire, and loss of consortium for Patricia Maguire, and
Whereas, as a result of the aforementioned accident, an action has been commenced in the Superior Court of Washington for King County entitled John Maguire and Patricia Maguire v. Steven A. Teuber and Jane Doe Teuber, husband and wife and the marital community composed thereof; and William W. Hadsall and Jane Doe Hadsall, husband and wife and the marital community composed thereof, defendants, King County Cause No. 00-2-29728-9 SEA;
Whereas, defendants Teuber did not have insurance coverage; and
Whereas, defendants Hadsall have insurance policy coverage through Farmer's Insurance bearing policy number with policy limits of $100,000.00, but have no other insurance agreements, and/or policies under which an insurance carrier may be liable to satisfy part or all of a judgment which may be entered in the aforementioned litigation, or to indemnify or reimburse defendants for payments made to satisfy any judgment; and
Whereas, defendants have no substantial assets of their own with which to satisfy a judgment greater than $100,000.00, and
Whereas, the plaintiffs have offered to settle their claims against Hadsall and Teuber for Hadsalls' liability insurance policy limit of $100,000.00; and
Whereas, the plaintiffs and defendants agree that the sums paid hereunder are not full compensation for damages sustained by the plaintiffs, and that the damages to plaintiffs resulting from their injuries, in fact, far exceed the amount to be paid hereunder; and
Whereas, this Agreement is being made for the sole benefit of the parties herein under the policy of the law favoring the settlement of litigation, which policy would be to some extent impaired if any remaining potentially liable persons or entities, including the State of Washington, received any benefit of any kind whatsoever by way of discharge of their liability, either in whole or in part; and
Whereas, there is no intent by plaintiffs or defendants to benefit any remaining potentially liable persons or entities, including the State of Washington, as a result of the covenants contained herein, but the sole intent is that this Agreement should be to their own benefit, and that any remaining potentially liable persons or entities, including the State of Washington, are not to be in any way construed as third party beneficiaries thereof; and
Whereas, defendants expressly deny any liability for the accident of October 1, 1999, the sums paid hereunder being for the purpose of avoidance of the uncertainties, inconvenience, and expenses of the pending lawsuit, and for the additional purpose of partial compensation to the plaintiffs for their damages resulting from the accident; and *944 Whereas, plaintiffs expressly reserve all rights of actions, claims, demands, and rights of execution against any and all other persons or entities, including the State of Washington, other than as mentioned herein;
1. In consideration of the payment of $100,000.00 to the plaintiffs, receipt of which is hereby expressly acknowledged, plaintiffs do covenant, and agree with defendants, their successors, assigns, agents, employees, and insurance carriers that plaintiffs (or any successor or assignee) will not execute or otherwise seek to enforce or collect on any judgment entered in the pending lawsuit rendered against the defendants, their assigns, agents, employees or insurance carriers. Plaintiffs will not assign any such judgment to any other party and, if such assignment is made, plaintiffs' assignors will be bound by the terms of this Covenant. Should judgment be entered against any defendant who is a party to this agreement, plaintiff will provide that defendant with a Satisfaction of Judgment promptly upon final disposition of all claims in this matter.
2. The plaintiffs expressly reserve all rights of action, claims, demands, and rights of action against any and all persons or entities, including the State of Washington, or any of its agents or agencies, other than as mentioned herein.
3. The plaintiffs expressly acknowledge that this Covenant Not to Execute is intended to constitute a complete resolution of all claims by the plaintiffs against defendants Teuber and Hadsall under RCW 4.22.000 such that any and all contribution claims against those defendants will be extinguished by this settlement. While the parties to this Covenant Not to Execute believe that this settlement is reasonable, it is hereby recognized that should a court at any time find that this settlement was unreasonable, this settlement is still effective between the parties to this agreement and any finding that the settlement is unreasonable shall not affect the validity of this agreement nor shall any adjustment be made in the amount paid between the parties to this agreement nor shall such a finding have any effect on the discharge of defendants Hadsall and Teuber from any liability for contribution.
 ----------------------------------------------
Dated this _____ day of ____________, 2001. John Maguire, plaintiff
 ----------------------------------------------
Dated this ______ day of ___________, 2001. Patricia Maguire, plaintiff
 ----------------------------------------------
Dated this ______ day of ___________, 2001. Steven A. Teuber, defendant
 ----------------------------------------------
Dated this ______ day of ___________, 2001. William W. Hadsall, defendant, on behalf of
 himself and his marital community
NOTES
[1] The covenant is attached as an appendix.
[2] Laws of 1986, ch. 305.
[3] See, e.g., Seattle-First Nat'l Bank v. Shoreline Concrete Co., 91 Wash.2d 230, 588 P.2d 1308 (1978). Joint and several liability requires each tortfeasor to be liable for the entire harm, and the plaintiff can sue one or all of the tortfeasors to obtain full recovery. Id. at 234-35, 588 P.2d 1308.
[4] RCW 4.22.070.
[5] RCW 4.22.070(1)(b).
[6] Id.
[7] RCW 4.22.070(1).
[8] RCW 4.22.060(2).
[9] The parties agree that Maguire was not at fault.
[10] Gallo v. Dep't of Labor & Indus., 119 Wash. App. 49, 54, 81 P.3d 869 (2003) (citing Cockle v. Dep't of Labor & Indus., 142 Wash.2d 801, 807, 16 P.3d 583 (2001); Stuckey v. Dep't of Labor & Indus., 129 Wash.2d 289, 295, 916 P.2d 399 (1996)).
[11] Id. (citing Wash. Pub. Ports Ass'n v. Dep't of Revenue, 148 Wash.2d 637, 645, 62 P.3d 462 (2003); Wagg v. Estate of Dunham, 146 Wash.2d 63, 73, 42 P.3d 968 (2002); Dep't of Ecology v. Campbell & Gwinn, L.L.C., 146 Wash.2d 1, 11, 43 P.3d 4 (2002)).
[12] See Washburn v. Beatt Equip. Co., 120 Wash.2d 246, 293, 840 P.2d 860 (1992) (citing Avlonitis v. Seattle Dist. Court, 97 Wash.2d 131, 138, 641 P.2d 169, 646 P.2d 128 (1982)) ("Statutes should be read as a whole.").
[13] See Cornelius J. Peck, Reading Tea Leaves: The Future of Negotiations for Tort Claimants Free from Fault, 15 U. PUGET SOUND L.REV. 335, 344 (1992); Gregory C. Sisk, Interpretation of the Statutory Modification of Joint and Several Liability: Resisting the Deconstruction of Tort Reform, 16 U. PUGET SOUND L.REV. 1, 50 (1992).
[14] See Better Fin. Solutions, Inc. v. Caicos Corp., 117 Wash.App. 899, 904, 73 P.3d 424 (2003) (citing Lumberman's of Wash., Inc. v. Barnhardt, 89 Wash.App. 283, 286, 949 P.2d 382 (1997)); State ex rel. McDonald v. Whatcom County Dist. Court, 19 Wash.App. 429, 431, 575 P.2d 1094 (1978), aff'd, 92 Wash.2d 35, 593 P.2d 546 (1979) (statutes in derogation of the common law must be strictly construed).
[15] Tegman v. Accident & Med. Investigations, Inc., 150 Wash.2d 102, 108 n. 3, 75 P.3d 497 (2003) (quoting Laws of 1986, ch. 305, § 100) (in enacting the TRA, the legislature sought in part to "create a more equitable distribution of the cost and risk of injury." It also noted that "governmental entities are faced with increased exposure to lawsuits and awards" and that comprehensive tort reform was necessary "[i]n order to improve the availability and affordability of quality governmental services[.]"); Brewer v. Fibreboard Corp., 127 Wash.2d 512, 531, 901 P.2d 297 (1995) (the Legislature enacted the TRA to encourage settlement).
[16] Shelby v. Keck, 85 Wash.2d 911, 918, 541 P.2d 365 (1975).
[17] Kottler v. State, 136 Wash.2d 437, 447, 963 P.2d 834 (1998).
[18] Washburn, 120 Wash.2d at 294, 840 P.2d 860.
[19] (Emphasis added.)
[20] Mills v. Inter Island Tel. Co., 68 Wash.2d 820, 829, 416 P.2d 115 (1966); Haney v. Cheatham, 8 Wash.2d 310, 316-19, 111 P.2d 1003 (1941).
[21] Peck, 15 U. PUGET SOUND L.REV. at 343.
[22] Id. at 343-44.
[23] Id. at 344 (citing Haney, 8 Wash.2d at 318, 111 P.2d 1003; Rust v. Schlaitzer, 175 Wash. 331, 336, 27 P.2d 571 (1933)).
[24] Sisk, 16 U. PUGET SOUND L.REV. at 50-51 (quoting Seidman v. City of Beverly Hills, 785 F.2d 1447, 1448 (9th Cir.1986)) (footnotes omitted).
[25] Id. at 51.