[No. 22152-1-III.   Division Three.   September 21, 2004.]

MICHAEL ROMERO, *Individually and as Personal Representative*, ET AL., *Respondents*, v. WEST VALLEY SCHOOL DISTRICT, *Appellant*.

*Robert M. Boggs*, for appellant.

*Brad E. Smith*; *Mariano Morales, Jr.* (of *Morales Law Office*); and *John R. Connelly, Jr.* and *Darrell L. Cochran* (of *Gordon, Thomas, Honeywell, Malanca, Peterson & Daheim, P.L.L.C.*), for respondents.

SWEENEY, A.C.J. — This is a damage suit for wrongful death. The primary issue before us is whether the trial court erred by refusing to treat a "covenant not to execute" as a "release." If the agreement effectively released one defendant from further liability, then the remaining defendant, West Valley School District (the District), the appellant here, is liable for only its proportionate share of the jury's damage award (75 percent). If, on the other hand, that defendant was not released and remained a party to the suit, then liability is joint and several and the District is liable for 100 percent of the damage award. We agree with both the rationale of and the holding in a recent

decision[1] from Division One of this court that the practical effect of these covenants not to execute is to release a defendant from any further liability. And we reverse the trial judge's ruling to the contrary. We affirm the balance of the judgment in the unpublished portion of this opinion.

## FACTS

### THE ACCIDENT

Aaron Romero was a kindergarten student at Summitview Elementary School in Yakima, Washington. His mother, Carrie Romero, met him at his classroom door at the end of classes on November 2, 1998. She had parked her car in an area in front of the school reserved for school buses to park and drive through. The area was, however, routinely used by everyone to load and unload children.

Ms. Romero took Aaron to the rear door of her car and opened the door for him. She did not wait for Aaron to get in. Instead she walked to the driver's door. She had positioned the driver's door against a curb. Her passenger door faced the drive through. Aaron did not get in the car. He instead turned and walked into the drive through. A pickup driving down the center of the drive through struck and killed him. The pickup driver did not and could not see Aaron.

There had been numerous, specific complaints of the chaotic intermingling of cars and people in this drive through. Clerk's Papers (CP) at 1245.

### THE SUIT

Aaron's parents, Michael and Carrie Romero, and Aaron's estate sued the West Valley School District. The District denied negligence and affirmatively alleged Ms. Romero's negligence was a factor contributing to Aaron's death. Mr. Romero and Aaron's estate then cross-claimed against Ms. Romero. The District unsuccessfully objected to

---

[1] *Maguire v. Teuber*, 120 Wn. App. 393, 85 P.3d 939 (2004).

the motion to add Ms. Romero as a cross-claim defendant arguing that she had parental immunity from suit by her son's estate.

THE SETTLEMENT AGREEMENT

Mr. Romero and Aaron's estate settled with Ms. Romero. Ms. Romero agreed to pay the limits of her automobile insurance and $5,000. Mr. Romero and the estate agreed that if they obtained a judgment of more than $30,000 against the District, they would reimburse Ms. Romero $1 for every $2 they collected from the District over the $30,000 amount, up to $5,000. They also agreed that Ms. Romero would remain in the suit as a defendant. But Mr. Romero and the estate would not execute on any judgment obtained against her. The agreement also provided that the attorney hired by Ms. Romero's insurance company to represent her would withdraw. And plaintiffs' attorney would represent her at trial. They called their agreement a "Settlement Agreement and Covenant Not to Execute." CP at 1049. The trial judge ultimately concluded that the settlement agreement was reasonable.

THE TRIAL

An accident reconstructionist and pedestrian safety expert testified for the plaintiffs. He reviewed police reports, videos of the scene, and photographs of Aaron and the pickup. He concluded that the drive through was dangerous for children. And its dangerous condition contributed to the accident.

A transportation engineer also testified for the plaintiffs. He reviewed the facts of the accident and specifically the design and operation of the bus lane and its use for loading and unloading children. He concluded that the Summitview drive through "was not reasonably safe under the design and operational conditions that existed." Report of Proceedings (RP) at 611. And, it "certainly was a cause," from an engineering standpoint, of the accident that killed Aaron.

RP at 611. The expert also suggested improvements to the design and operation of the drive through.

The jury found in favor of the plaintiffs and awarded damages totaling $1.8 million. By special verdict, it found the District 75 percent responsible for the losses and Ms. Romero 25 percent responsible.

The trial judge denied the District's motion for judgment as a matter of law and/or new trial.

## DISCUSSION

Covenant Not to Execute

The District argues that the practical effect of this settlement agreement was to relieve Ms. Romero of any meaningful exposure in this suit. And no matter what the Romeros and the estate chose to call their agreement, the suit against Ms. Romero was effectively at an end after the agreement.

The Romeros respond first that the covenant not to execute is contemplated by the tort reform act. Specifically, RCW 4.22.060(2)[2] recognizes covenants not to execute. It provides that a covenant not to enforce a judgment discharges a party from all liability but does not discharge others on the same claim unless it so provides. The Romeros also point out that Ms. Romero still had an interest in defending the suit. She had something to lose by admitting fault—she received a jury award that was $250,000 smaller than Mr. Romero's because the jury found her negligent.

■ The agreement here is a classic "Mary Carter"[3] agreement. These agreements effectively limit the settling defendant's liability by

plac[ing] a limit on the [settling defendant's] maximum liability . . . , and further provid[ing] that such sum will be

---

[2] The statute provides, in part, that "[a] . . . covenant not to enforce judgment . . . discharges that person from all liability for contribution."

[3] "Mary Carter" comes from the agreement considered in *Booth v. Mary Carter Paint Co.*, 202 So. 2d 8 (Fla. Dist. Ct. App. 1967).

reduced or extinguished in the event of a recovery against the nonagreeing cotortfeasor, the amount of reduction depending on the amount recovered. Further, the plaintiff agrees to not execute on any judgment against the settling defendant, seeking recourse against only the nonagreeing defendants, and the defendant agrees to continue as a party defendant in the trial of the action.

Christopher Vaeth, Annotation, *Validity and Effect of "Mary Carter" or Similar Agreement Setting Maximum Liability of One Cotortfeasor and Providing for Reduction or Extinguishment Thereof Relative to Recovery Against Nonagreeing Cotortfeasor*, 22 A.L.R.5th 483, at 497 (1994).

The question whether to construe such an agreement as a release of Ms. Romero has important ramifications for the plaintiffs and the remaining defendant, the District. If the effect of the agreement is to release Ms. Romero, then the District is liable for only its proportionate share of the jury award—75 percent. RCW 4.22.070(1). But if Ms. Romero is not "released" by the agreement, and remains a defendant, then the District is jointly and severally liable for the total damage award. And Mr. Romero and the estate can collect 100 percent of their award from the District. RCW 4.22.070(1)(b). The purpose of the agreement here is to avoid the "several" liability scheme directed by the legislature as part of tort reform in 1986.

■■ This same question before us has been recently answered by Division One of this court: "[t]he central issue in this case is the meaning of 'release' as it is used in the [tort reform act]." *Maguire v. Teuber*, 120 Wn. App. 393, 395, 85 P.3d 939 (2004). The court there held that a covenant not to execute on a judgment was the same as a "release," as that term is used in the tort reform act. *Id.* at 396. The court concluded that RCW 4.22.070 (the statute imposing joint and several liability) uses the term "release" as a verb, not as a noun. *Id.* That is, the statute provides that "[j]udgment shall be entered against each defendant except those who have been released by the claimant." RCW 4.22.070(1). And the court, we think appropriately, focused

on the practical effect of what was being accomplished by the agreement: "[t]he settlement document in this case has the practical effect of releasing the defendants." *Maguire*, 120 Wn. App. at 397. And that is precisely the effect here.

The common law doctrine of joint and several liability served important and appropriate legal and social purposes. *Seattle-First Nat'l Bank v. Shoreline Concrete Co.*, 91 Wn.2d 230, 236, 588 P.2d 1308 (1978). But the legislature saw fit to reject that notion in favor of a legal policy that defendants should be liable only for that portion of the damages they caused. J. Michael Phillips, Comment, *Looking out for Mary Carter: Collusive Settlement Agreements in Washington Tort Litigation*, 69 WASH. L. REV. 255, 257 (1994); Cornelius J. Peck, *Reading Tea Leaves: The Future of Negotiations for Tort Claimants Free from Fault*, 15 U. PUGET SOUND L. REV. 335, 343-44 (1992). That is a proper legislative function. *See Niece v. Elmview Group Home*, 131 Wn.2d 39, 58, 929 P.2d 420 (1997). And so we are not free to read it out of the statutory scheme. *See Ko v. Royal Globe Ins. Co.*, 20 Wn. App. 735, 740, 583 P.2d 635 (1978).

In *Alder v. Garcia*, a New Mexico case, the court analyzed a "Mary Carter" agreement using New Mexico's version of tort reform law. *Alder v. Garcia*, 324 F.2d 483 (10th Cir. 1963). There, the court held that an agreement similar to that made by the Romeros was contrary to the public policy expressed in New Mexico's Contribution Among Joint Tortfeasors Act. *Id.* at 485. The claimant there had settled with one tortfeasor. He agreed to assign to that tortfeasor's insurer one-half of the claimant's recovery from the remaining tortfeasor, up to $80,000. But a New Mexico statute prohibited a settling tortfeasor from recovering contribution from another joint tortfeasor, one whose liability was not extinguished by the settlement. *Id.* In *Alder*, the assignment allowed the insurer to recoup from the remaining tortfeasor up to one-half of its settlement. The court concluded that the result was contrary to the policy expressed by the New Mexico law that settling tortfeasors have no right of contribution against nonsettling tortfeasors. *Id.*

Here, this "Settlement Agreement and Covenant Not to Execute" effectively released Ms. Romero. It allowed Mr. Romero and the estate to collect 100 percent of any judgment from the District. And, like the result in *Alder*, the intended result here is contrary to the letter and spirit of the tort reform act. We hold then that the District is liable for only its proportionate share of the jury's award of damages—75 percent.

We reverse the judgment to the extent it provides the District is jointly and severally liable for the portion of Mr. Romero's and the estate's damages that the jury attributed to Ms. Romero's negligence. The District is not jointly liable for Ms. Romero's negligence. We need not address the District's arguments that Ms. Romero had parental immunity from suit by Aaron's estate and that RCW 4.24.010, which provides for a single cause of action by the parents for a child's death, prevented Mr. Romero from suing both the District and Ms. Romero.

The remainder of this opinion has no precedential value. Therefore, it will be filed for public record in accordance with the rules governing unpublished opinions. RCW 2.06.040.

KURTZ and BROWN, JJ., concur.

Review denied at 154 Wn.2d 1010 (2005).